# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-06-00412-CV

**Constable Gary Griffin, Williamson County Precinct 1, Appellant**

**v.**

**Lisa Birkman, County Commissioner Precinct 1; Cynthia Long, County Commissioner Precinct 2; Valerie Covey, County Commissioner Precinct 3; Ron Morrison, County Commissioner Precinct 4; and Dan A. Gattis, County Judge, Appellees[1]**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 05-1039-C368, HONORABLE JAMES F. CLAWSON JR., JUDGE PRESIDING

## O P I N I O N

We withdraw our opinion and judgment dated November 28, 2007, and substitute this opinion and judgment in its place. We overrule the appellant's motion for rehearing.

Constable Gary Griffin appeals from the trial court's judgment against him in his suit for declaratory judgment asking that the court find that appellees (collectively "the

---

[1] This suit was originally brought against Lisa Birkman, Greg Boatright, S. Thomas McDaniel, Frankie Limmer, and John Doerfler. Other than Lisa Birkman, the successors-in-office have been substituted. *See* Tex. R. App. P. 7.2(a) (automatic substitution of public officer when officer is party in official capacity).

County Commissioners Court"[2]) lacked authority to transfer funding for the Williamson County Mental Health Unit from his office to that of the Williamson County Sheriff. We will affirm the trial court's judgment.

## Factual and Procedural Background

Williamson County has a "Mental Health Unit," a team of law enforcement officers who have specialized training in responding to mental health emergencies. This unit had been under the direction of the constable for Precinct One for eight years. In October 2005, however, the County Commissioners Court formed a committee to study the issue of the best placement for the Mental Health Unit. For the budget year 2005-06, the unit remained in Precinct One, with funding for six mental health deputies and two mental health supervisors. Griffin and four deputy constable positions were also funded.[3]

The current litigation was precipitated by events that occurred on October 19, 2005. Griffin ordered all Precinct One deputies to stop responding to mental health calls. His chief deputy contacted the Williamson County 911 dispatcher and all local law enforcement officials and notified them that Griffin's office would no longer respond to mental health emergencies or transport the mentally ill and mentally disabled. The County Commissioners Court convened an emergency meeting on October 20, 2005, and decided to transfer funding for the Mental Health Unit from

---

[2] The language in the Texas Constitution establishing the "County Commissioners Court" does not use an apostrophe in "Commissioners." *See* Tex. Const. art. V, § 18; 35 David B. Brooks, *Texas Practice: County and Special District Law* § 5.2 & n.1 (2d ed. 2002). We will use the spelling as it appears in the Texas Constitution.

[3] Ordinarily, a Williamson County constable would only have two deputy constables and an administrative staff member.

2

the Precinct One Constable's budget to the Sheriff's office. The Sheriff had authorized, but unfilled, positions available that he offered to the mental health deputies. The funding and ancillary resources, such as cars, for these positions were transferred from the Precinct One Constable's budget to the Sheriff's budget.

Griffin filed suit for declaratory judgment with ancillary injunctive relief requested. The temporary injunction was denied. The County Commissioners Court moved for both a traditional and a no-evidence summary judgment; the trial court granted a general summary judgment.

In four issues on appeal, Griffin contends that the trial court erred in granting summary judgment because: (1) once the County Commissioners Court adopts the annual budget, the Commissioners lack authority to amend that budget for the purposes of interfering with or countermanding the decision of a constable as to how to deploy his deputies during that fiscal year; (2) local government code section 111.104(b) could not serve as authority for the Williamson County Commissioners Court to cut Constable Griffin's original annual budget because that section only gives authority to a Commissioners Court to make an emergency "expenditure" that increases the county's original budget; (3) even if section 111.041(b) could be read to authorize a budget cut, summary judgment was inappropriate given the genuine fact issue of whether a "grave public necessity" existed when Constable Griffin temporarily deployed his deputies to serve criminal warrants and civil papers while deciding on a case-by-case basis whether to take mental health calls or let the Sheriff's office handle them, and no admissible evidence was introduced that a single mental health call went unanswered or that such calls would go unanswered in the future; and

3

(4) local government code section 111.041(c) does not give the Williamson County Commissioners Court authority to "transfer" budgeted amounts to budget items that were created by the "transfer" order that did not exist in the original annual budget. In order to properly analyze this case, we must first discuss the roles and interaction of the County Commissioners Court and the District Court.

## Discussion

### Mootness

The County Commissioners Court moved to dismiss this appeal for mootness because Griffin's complaint is about a budget transfer that occurred in fiscal year 2006 and the county is now operating under a new budget for fiscal year 2007. The mootness doctrine limits courts to deciding cases in which an actual controversy exists. *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988). A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings, including the appeal. *In re Kellogg Brown & Root*, 166 S.W.3d 732, 737 (Tex. 2005). A dispute over attorneys' fees is a live controversy. *McElroy v. City of Temple*, 208 S.W.3d 471, 474 (Tex. App.—Austin 2006, pet. denied) (citing *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642 (Tex. 2005)). Griffin sued for a declaratory judgment, injunctive relief, and attorney's fees. Although the fiscal year at issue has ended, a decision that the County Commissioners Court acted improperly, thus reversing the trial court judgment, would necessitate a remand to the trial court to consider whether an award of attorney's fees to Griffin would be appropriate. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). Therefore, we overrule the County Commissioners Court's motion to dismiss and consider the merits of Griffin's claims on appeal.

4

*County Commissioners Court*

The Texas Constitution provides that the County Commissioners Court "shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed." Tex. Const. art. V, § 18. Thus, the Texas Constitution established the Commissioners Court as the county's principal governing body. *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997). The powers and duties of the Commissioners Court include aspects of legislative, executive, administrative, and judicial functions. *Id.* (citing *Avery v. Midland County*, 390 U.S. 474, 482 (1968); *Ector County v. Stringer*, 843 S.W.2d 477, 478 (Tex. 1992)). In the exercise of its powers and jurisdiction over county business, the County Commissioners Court has implied authority to exercise broad discretion to accomplish the purposes intended. *See Canales v. Laughlin*, 214 S.W.2d 451, 453 (Tex. 1948); *Cosby v. County Comm'rs of Randall County*, 712 S.W.2d 246, 248 (Tex. App.—Amarillo 1986, writ ref'd n.r.e.). Constitutional and statutory provisions conferring authority upon the Commissioners Court should be broadly and liberally construed to ascertain the scope of the authority granted either expressly or by necessary implication. *Canales*, 214 S.W.2d at 453; *Cosby*, 712 S.W.2d at 248. Along with the constitutionally derived jurisdiction over "county business," the County Commissioners Court has specific statutory authority to oversee the fiscal operation of the county by approving and authorizing a budget. Tex. Loc. Gov't Code Ann. §§ 111.001-.095 (West 2008).[4]

---

[4] Sections 111.001-.014 govern budget preparation in counties with a population of 225,000 or less; sections 111.031-.045 govern in counties with a population of more than 225,000; sections 111.061-.075 provide an alternate method of budget preparation in counties with a

The County Commissioners Court performs a legislative function when it creates the budget for the county's offices and departments. *Hooten v. Enriquez*, 863 S.W.2d 522, 528 (Tex. App.—El Paso 1993, no writ). This budgetary power carries with it broad discretion in making budgetary decisions. *Id.; Commissioners Court of Caldwell County v. Criminal Dist. Att'y*, 690 S.W.2d 932, 935 (Tex. App.—Austin 1985, writ ref'd n.r.e). This legislative function, when properly performed, is protected from the scrutiny of the judicial branch by the constitutionally mandated separation of powers doctrine. *See* Tex. Const. art. II, § 1; *Hooten*, 863 S.W.2d at 522. "The budget process is *political*. It combines inextricably the two legislative powers of 'taxation' and 'appropriation,' the latter being a distribution and setting aside of parts of the total available revenue among the various government functions, operations, and programs." *Commissioners Court of Caldwell County*, 690 S.W.2d at 934. "The correlation of total revenue and expenditure, and apportionment of the former among the various county functions, operations, and programs, *in the overall public interest*, is the essence of the decision making entrusted to the judgment of the

---

population of more than 125,000; sections 111.091-.095 are miscellaneous sections labeled "Budget Appropriations." Tex. Loc. Gov't Code Ann. §§ 111.001-.095 (West 2008). Griffin, in his motion for rehearing, complains that we cited a section of the Local Government Code concerning posting the budget on the county website for counties of less than 225,000 when Williamson County has a population of greater than 225,000 and operates under Subchapter B. He makes no record references for this proposition. Although the parties cite statutory sections dealing with counties of over 225,000, it does not appear from any record references in the briefs that the population of Williamson County or which subchapter governs Williamson County's budget process was established as an evidentiary matter. We are not obligated to search the record to verify Griffin's assertion. *See LaChalet Int'l, Inc. v. Nowik*, 787 S.W.2d 101, 107 (Tex. App.—Dallas 1990, no writ).

Commissioners Court. There could be no clearer grant of discretionary power." *Id*. at 934-35. The power of the Commissioner's Court is not unlimited, however, but subject to certain review powers of the district court.

### Supervisory Authority of District Court

The Texas Constitution vests in the district court "appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulation as may be prescribed by law." Tex. Const. art. V, § 8. The enabling statute empowering the district court to exercise such control merely repeats the terms of the constitution. *See* Tex. Gov't Code Ann. § 24.020 (West 2004). With very few exceptions, such as the provision for the appeal of a County Commissioners Court order creating improvement districts, the legislature has not prescribed any specific manner by which the district court exercises such supervisory power. *Hooten*, 863 S.W.2d at 528. The lack of legislative direction has left to the courts the task of defining the scope of the district court's supervisory powers over the actions of the County Commissioners Court. *Id*.

Although the County Commissioners Court is performing a legislative function when creating the budget, if that body acts beyond its authority in attempting to perform that legislative function, the supervisory jurisdiction of the district court comes into play. *Id.* The district court may reverse a Commissioners Court order only if the latter has acted arbitrarily, capriciously, collusively, fraudulently, or otherwise in abuse of its discretion. *See Ector County*, 843 S.W.2d at 479; *Stovall v. Shivers*, 103 S.W.2d 363, 366 (Tex. 1937); *Tarrant County v. Shannon*, 104 S.W.2d 363 (Tex. 1937); *Hays County v. Hays County Water Planning P'ship*, 106 S.W.3d 349, 355

7

(Tex. App.—Austin 2003, pet. denied); *Vondy v. Commissioners Court of Uvalde County*, 714 S.W.2d 417, 420 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) (invoking district court jurisdiction by alleging that order is voidable as being "arbitrary, capricious, unsupported by substantial evidence or that the court has acted beyond its jurisdiction"). A court may not substitute its judgment and discretion for the judgement and discretion of the governing body upon whom the law visits the primary power and duty to act. *Ector County*, 843 S.W.2d at 479. If such a governing body acts illegally, unreasonably, or arbitrarily, a court of competent jurisdiction may so adjudge, but there the power of the court ends. *Id.* (citing *Lewis v. City of Fort Worth*, 89 S.W.2d 975, 978 (Tex. 1936)).

For example, *Ector County* dealt with the problem of whether the trial court had jurisdiction to determine the salary allegedly owed to constables for past services. 843 S.W.2d at 477. The court noted that one of the duties the constitution entrusts to the discretion of the Commissioners Court is to set constables' salaries and that it had previously held that this provision imposes a mandatory, ministerial duty on the Commissioners Court to set a reasonable salary. *Id*. at 479 (citing *Vondy v. Commissioners Court*, 620 S.W.2d 104 (Tex. 1981)). The district court could order the Commissioners Court to carry out its duty to set a reasonable salary, but could not substitute its discretion for that of the Commissioners by making that determination itself. *Id*. In other words, the court could order the Commissioner's court to set a reasonable salary, but could not itself determine the reasonable salary: "In short, the district court may order the commissioners court to exercise its discretion, but cannot tell the commissioners what decision to make. Once the commissioners court exercises its discretion, the district court may review the order for abuse of

8

discretion, but it cannot substitute its discretion for that of the commissioners court." *Id.* The above cases all speak of the County Commissioners Court action being reversible only if it has abused its discretion when it is acting in its legislative capacity. We now consider what that phrase means.

***Abuse of Discretion***

As extensively stated in the caselaw, the standard of review to be applied by the trial court to review a Commissioners Court action is "abuse of discretion." As noted in *Hooten*, 863 S.W.2d at 528, "This rule [abuse of discretion standard] is easy to state, but because of the broad discretion vested in the commissioners court, it can be applied only on a case-by-case basis." Justice Powers, writing for the Austin Court of Appeals, expressed his frustration that the abuse of discretion standard "means everything and nothing at the same time." *Landon v. Jean-Paul Budinger, Inc.*, 724 S.W.2d 931, 935 (Tex. App.—Austin 1987, no writ).

*Landon* observed that the abuse-of-discretion standard is a review-limiting device, that, within limits, immunized from appellate revision the choice made by the trial court in a particular case. The opinion compared that choice to that of an administrative agency in a contested case that is protected from reversal on judicial review by the standard set forth in the Administrative Procedures Act that couples "abuse of discretion" with "arbitrary or capricious" and "clearly unwarranted exercise of discretion." *Id*. *Landon* then sets out several factors to use in analyzing the appellate record to decide whether an abuse of discretion occurred: 1) Was the determination complained of on appeal a matter committed by law to the trial court?; 2) Did the trial court, in making the determination complained of on appeal, recognize and purport to act in an exercise of the discretion committed to it by law?; 3) Does the appellate record reveal sufficient facts upon

9

which the trial court could act rationally in an exercise of its discretion?; 4) Did the trial court exercise erroneously the discretion committed to it by law?; 5) If the record reveals legal error by the trial court, is the error of a magnitude to require reversal, considering whether its effect on the outcome of the case was prejudicial or whether it adversely affected the fairness of the proceedings as a whole? *Id.* at 937-39.

In his motion for rehearing, Griffin complains that we improperly applied the summary-judgment standard of review. In one sense, we agree with Griffin. This case procedurally is presented as a summary judgment in a declaratory judgment action. However, we cannot simply mechanically apply a summary-judgment standard of review and ensure proper deference to the County Commissioners Court's legislative discretion. We use an analysis comparable to that when both the sufficiency of the evidence and abuse of discretion standards of review apply, that is, a hybrid analysis. *See Gonzalez v. Tippit*, 167 S.W.3d 536, 544 (Tex. App.—Austin 2005, no pet.) (citing *In re Estate of King*, 244 S.W.2d 660, 660 (Tex. 1951)); *see also Doyle v. Doyle*, 955 S.W.2d 478, 479 (Tex. App.—Austin 1997) (under abuse of discretion standard, legal and factual insufficiency are relevant factors in assessing whether trial court abused its discretion); *Landon*, 724 S.W.2d at 935 (one factor to determine whether abuse of discretion has occurred is whether the appellate record reveals sufficient facts upon which the trial court could act rationally in an exercise of its discretion). We review whether the trial court had sufficient information upon which to exercise its discretion and whether the trial court erred in its application of discretion by making a decision that was arbitrary or unreasonable based on the evidence elicited. *Tippit*, 167 S.W.2d

at 544.  Or, as stated in *Vondy*, the order is reviewed to determine whether it is "arbitrary, capricious, unsupported by substantial evidence or that the court has acted beyond its jurisdiction."  *See* 714 S.W.2d at 420.[5]  We turn now to the issues presented.

### *Sphere of Authority*

In his first issue, Griffin complains that the budget transfer improperly invaded his sphere of authority as an elected official and was thus improper.  Each elected county official has a delegated sphere of authority that cannot be invaded.  *See Pritchard & Abbott v. McKenna*, 350 S.W.2d 333, 335 (Tex. 1961).  This sphere of authority covers only those duties that the Texas Constitution and statutes specifically delegate to the officer, however.  *Id*.  The protected "sphere of authority" does not protect discretionary duties that are outside the "core duties" of the elected official.  *Agan*, 940 S.W.2d at 79.  Accordingly, the assignment of certain duties is not committed by law to the Commissioners Court's discretion and an attempt to reassign these core duties would constitute an abuse of discretion.  *See Landon*, 724 S.W.2d at 939.

The Texas Constitution creates the constable's office.  Art. V, § 18.  The general powers and duties of a constable are specified in the local government code:

> (a) A constable shall execute and return as provided by law each process, warrant, and precept that is directed to the constable and is delivered by a lawful officer.  Notices required by Section 24.005,

---

[5]  With regard to statutory construction issues, those are questions of law for the court to decide and that we review de novo.  *Texas Dep't Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002); *Sanchez v. Texas State Bd. of Med. Exam'rs*, 229 S.W.3d 498, 512 (Tex. App.—Austin 2007, no pet.).

11

Property Code, relating to eviction actions are process for purposes
of this section that may be executed by a constable.

[(b), (c), (d); geographic authorizations and restraints]

(e) The constable shall attend each justice court held in the precinct.

Tex. Loc. Gov't Code Ann. § 86.021 (West 2008). The operation of a mental health unit is not

contained within the list of "core duties" as set out by the legislature.[6]

The shift of duties and funding from one county office to another in this case

appears to fall within the ambit of *Agan*. In *Agan*, the County Commissioners Court of Titus County

transferred payroll preparation responsibilities from the County Treasurer to the County Auditor.

940 S.W.2d at 78. From 1987 until 1994 a payroll clerk working for the Treasury prepared the

county payroll. In 1994, the Commissioners Court amended the budget to combine administrative

duties involving county payroll, the insurance program, personnel, and receiving purchase orders and

their payment into one full-time position assigned to the County Auditor. *Id*. at 79. These duties had

previously been divided between the payroll clerk and a part-time employee in the Auditor's office,

who had recently resigned. *Id*. The Treasury employee transferred to the Auditor's office to fill this

position. *Id*. After enumerating various core functions of the Treasurer's office, the court noted that

payroll preparation responsibilities had not been assigned to any county official in particular and

thus were not a core function of the Treasurer. *Id.* at 81-82. Therefore, acting in its legislative

---

[6] We note that, in his brief, Griffin refers to handling mental health calls "in addition to their 'core' Constable duties serving criminal warrants, civil papers, and providing a bailiff to the JP Court." In other words, Griffin acknowledges that handling mental health calls was not a core function of the office.

capacity, the Commissioners Court was able to delegate the responsibilities to an appropriate county official and had the power to transfer the payroll duties to the Auditor. *Id.* The court then noted that the Treasurer was given the exclusive power to disburse funds, and the Commissioners could not transfer functions involving fund disbursement to the auditor. *Id.* The court concluded: "If the Legislature does not specifically assign a duty to the County Treasurer, that duty is not one of the County Treasurer's core functions. The Commissioners Court may, within its discretion, assign those non-core functions to other county officials the legislature authorizes to perform those functions." *Id.* at 82.

In the current case, the County Commissioners Court transferred funding for a number of jobs from the constable to the sheriff. Griffin, in his fourth amended petition, stated that he "is no longer challenging whether the Commissioners Court's budget cut left him with adequate staff."[7] This statement can only mean that Griffin could perform the core duties of his office. Accordingly, under *Agan,* the County Commissioners Court had the discretion to assign these non-core functions to another official authorized to perform those duties.[8] The Commissioners Court did not improperly intrude into Griffin's protected sphere of authority by reassigning non-core functions to another office and thus exercised discretion entrusted to it. *See Landon*, 724 S.W.2d at 937-39. We overrule Griffin's first issue and turn to a discussion of the budget process.

---

[7] Plaintiff's Fourth Amended Petition for Declaratory Judgment and Ancillary Injunctive Relief.

[8] Although *Agan* did not expressly discuss the timing of the transfer in that case, because the opinion referred to "amending" the budget, it appears comparable to the budget amendment at issue in this case as an event that occurred after the start of the fiscal year.

*Budget Issues*

In *Caldwell County*, the court observes that the basic procedure of governmental budget-making is relatively uniform. The chief executive of the political body prepares a "budget" or estimates of necessary expenses and revenues for the ensuing fiscal year, "which is nothing more than a *proposal* to the pertinent legislative body." 690 S.W.2d at 933-34. "The proposal is infused with legal effect only by enactment of the appropriate legislative body, fixing the revenue and appropriate measures necessary in its judgment. The various departments and officers of government then execute those measures within any restraints set in the budget document or by general law." *Id.*

The statutes controlling the budgetary process for counties refer to "the budget." We must identify the document that had this legal effect, inasmuch as Griffin appears to contend that there is, at the least, a fact issue about which of many documents is the one with legal effect. Griffin asserts that this Court was grossly mistaken in its assessment of which document was "the" budget. The opinion relied on a document that Griffin introduced into evidence. This document, labeled "Williamson County FY 06 Approved Budget," was introduced as "Plaintiff's Exhibit Number 2" at a hearing on Griffin's request for a temporary injunction ancillary to his suit for declaratory relief. The county attorney did not object.[9] In turn, the summary judgment evidence included the record from the temporary injunction hearing. Griffin cannot introduce this document at a proceeding that

---

[9] In fact, on the same page as the county auditor's testimony that Griffin claims creates a fact issue concerning the budget, the auditor identifies Plaintiff Exhibit 2 as "our 06 budget."

14

is part of this case and now repudiate it as representing the adopted Williamson County FY 06 budget. References to *the* budget are quite properly references to this document.

"The point most often contended regarding the county budget is the means of amending the budget and the necessary reasons therefor—whether an emergency must exist to permit the commissioners court to shift funds from one account to another account, or create and fund a new budget item entirely." 35 David B. Brooks, *Texas Practice: County and Special District Law* § 5.1 at 776-77 (2d ed. 2002). Griffin's remaining three issues challenge the amendment process by complaining that the County Commissioner Court improperly amended the budget because: an expenditure under this section must increase the budget (issue two); no "grave public necessity" or emergency existed to allow the budget to be amended (issue three); and any budget transfer must be from one line item to another existing line item for the same object, but this transfer improperly created new line items (issue four).

### Emergency Expenditure

A county commissioners court may authorize an emergency expenditure as an amendment to the original budget "only in a case of grave public necessity to meet an unusual and unforeseen condition that could not have been included in the original budget through the use of reasonably diligent thought and attention." Tex. Loc. Gov't Code Ann.§ 111.041(b). Griffin asserts that an expenditure under this section must increase the budget. In construing a statute, we look first at the statute's plain and common meaning. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000); *Fitzgerald v. Advanced Spine Fixation*, 996 S.W.2d 864, 865 (Tex. 1999). The court presumes that the Legislature intended the plain meaning of the words

15

it used.  *Allen*, 15 S.W.3d at 527.  And words, unless used as a term of art or connected with a particular trade or subject matter, are given their ordinary meaning. *In re BACALA*, 982 S.W.2d 371, 380 (Tex. 1986); Tex. Gov't Code Ann. § 311.011 (West 2005).

"Expenditure" means:  the act or process of paying out; disbursement; a sum paid out. *Black's Law Dictionary* 598 (7th ed. 1999).  "Expend" means to pay out or spend money. *Webster's Third New International Dictionary* 799 (Philip B. Gove ed., 1986).  The plain meaning of the word "expenditure" does not support Griffin's assertion that an emergency expenditure must increase the budget.

In his third issue, Griffin complains that there was, at the least, a fact issue concerning whether an emergency existed.  In our hybrid review, we treat this as a complaint that the controverted state of the evidence meant that the County Commissioners Court abused its discretion by acting on that evidence.

All presumptions are made in favor of the validity of the acts of Commissioners Courts.  *Bexar County v. Harley*, 150 S.W.2d 980, 987 (Tex. 1941).  *Bexar County* involved the County Commissioners' decision to use unexpended money that had been budgeted to hold elections using paper ballots to rent voting machines and the subsequent litigation seeking to void the order implementing the transfer of funds.  In its analysis of whether the Commissioners Court should have foreseen the need for voting machines at the time of the adoption of the annual budget, the supreme court said:  "It is fair to assume that the circumstances making it advisable and to the county's best interest to adopt voting machines came about after the original budget had been set up

16

and were not then foreseen." *Id*. at 987-88. The supreme court also notes: "Certainly it would be unfair to assume against the members of the court, who are presumed to have acted lawfully in the discharge of their duties, that they intended to act unlawfully." *Id.*

"Emergency" means an unforeseen combination of circumstances or the resulting state that calls for immediate action; a pressing need. *See Webster's Third New International Dictionary* 741 (Philip B. Gove ed., 1986). Griffin wants to define the emergency such that specific mental health calls had to go unanswered and the County Commissioners Court had to introduce evidence of such. However, the emergency as defined by the Commissioners was that of an elected official who communicated to others that he would not perform certain duties assigned to him.

The County Commissioners Court met in an emergency session. At that meeting, the County Commissioners Court determined that an emergency existed. When later asked by Griffin to describe the emergency, Commissioner Birkman responded, "Constable Griffin had ceased to take mental health calls." Griffin then responded, "Okay. And I think that's a given, Commissioner, and I'm not going to argue with you about that." Commissioner Birkman then testified that the emergency was ongoing "that since Constable Griffin decided not to take mental health calls without giving any real notice that [refusing to take mental health calls] could happen again."

Whether the budget needs amendment is a determination committed to the discretion of the County Commissioners Court. The County Commissioners Court's order that resulted from this meeting makes detailed findings of fact and sets out conclusions of law concerning the existence of a grave public necessity. The order also acknowledged the limit on the County Commissioners Court's authority in that it could not dictate to Griffin which constables to fire and could not dictate

17

to the Sheriff which constables to hire for his deputies. We presume the regularity of this order. *See Bexar County*, 150 S.W.2d at 987. The County Commissioners Court acted in an exercise of its discretion. It had before it sufficient facts on which to act. Accordingly, the County Commissioners Court did not abuse its discretion. *See Landon*, 724 S.W.2d at 937-39. We overrule Griffin's second and third issues.

### Budget Transfer Authority

In his fourth issue, Griffin complains that local government code section 111.041 authorizes a budget transfer only from one budgeted line item to another existing budgeted line item. We conclude that Griffin's interpretation of the statute would improperly return a restriction that was eliminated in the last revision to the statute.

The Texas Local Government Code gives budgetary transfer authority to the Commissioners Court: "The Commissioners' Court by order may amend the budget to transfer an amount budgeted for one item to another budgeted item without authorizing an emergency expenditure." Tex. Loc. Gov't Code Ann. § 111.041(c) (West 2008). A previous version of the transfer authority under section 111.041 did contain a limitation that a "budget surplus" could be transferred to a budget item of "similar kind and fund" as long as the total budget was not increased. *See Hooten*, 863 S.W.2d at 529-30 (dealing with propriety of mechanism used to create "surplus" to transfer money from County Clerk to Record Office). However, the 75th legislature amended this

18

section to the current version quoted above, removing the "like kind" and "surplus" restrictions. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 1197, § 3, 1997 Tex. Gen. Laws 4612. We decline to read into the statute a restriction not supported by its plain language.

As noted above, the statute in discussing transfers and amendments, refers to "the" budget and, for purposes of this case, we have defined "the" budget as being Plaintiff's own Exhibit Two. The Williamson County budget does not show individual salaries as separate line items; each department's budget simply shows a total for salaries, FICA, and other categories of expenditures. For example, the Commissioner's budget for Precinct One simply shows an "object code" of 001100 for "salaries" with a total of $139,815 allocated for salaries. The Precinct Two budget, under the same object code and label, shows a total of $145,285 allocated for salaries. Similarly, each of these two precincts shows an "object code" of 002010 for "FICA" with totals of $10,920 and $11,115, respectively, allocated for this item. The order authorizing the budget transfer contains a chart labeled, "Line Item Transfers for Transfer of Mental Health Unit from Dept. 551 [Constable, Precinct One] to Dept. 560 [Sheriff]." Under "Line Item" 1100, "Salaries," it shows the Precinct One current budget allocating a lump sum of $509,370.00, with a transfer to the Sheriff of a lump sum of $229,363.49. The transfer budget tracks the format of the county budget with a lump-sum line item for FICA, retirement, and other categories of expenses. The transfer was from one budget item to another, as specified in the statute.

Griffin singles out the auditor's testimony that, even if category 1100 has money in it, a department may not simply create a position. Even accepting that evidence as true does not make the transfer improper. The sheriff testified that he had positions in the budget that were

19

authorized, but unfilled. He used those positions to offer employment to the mental health deputies.

The funding for these deputies was transferred from the budget item for the Precinct One Constable

to the Sheriff. Such a transfer in the form of a "rehire" of employees by one precinct from another

precinct, with the funds originally budgeted for the first precinct of employment following the

employees to their new precinct, was approved in an attorney general opinion. *See* Op. Tex. Att'y

Gen. No. DM-158 at 5 (1992).

Griffin's argument must really be that the transfer was invalid because these "slots"

or line items used by the Sheriff were not labeled "mental health deputies." Griffin's position would

ultimately mean that the Sheriff could not fill authorized positions after the adoption of the budget

because those positions would have had someone else's name on the existing salary schedule.

In his motion for rehearing, Griffin complains that an item labeled "MHMR" was

transferred from his budget to the Sheriff's budget which had no such line item and demands that

this Court address this specific item.[10] The fund referred to is a fund associated with the mental

health unit and is used to pay for commitment hearings performed outside the county. In addition

to transferring the deputies, the associated equipment, such as cars, was transferred. It would make

no sense to leave funds designated for mental health purposes in the precinct from which that unit

had been transferred. The county did not create a new fund; the money was already allocated

---

[10] Griffin cites Texas Rule of Appellate Procedure 47.1 for this proposition. Rule 47.1 states: "The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and *necessary* to final disposition of the appeal." (Emphasis added.) In point of fact, a stern application of Rule 47.1 would probably mandate that we choose one of the several available grounds for affirmance and discuss no more. Appellees' brief suggests: "This Court should start with § 111.041(c) (Issue No. 4) for the authority of the budget transfer first, because it is conclusive authority for the budget transfer." (Appellees brief, p. 14, fn. 3).

and designated for use for the mental health purpose of commitment hearings. *See Bexar County*, 150 S.W.2d at 987 ("[T]he appropriation made by the amendment was within an object (election expense) of the budget as originally adopted.").

The County Commissioners Court did not abuse its discretion in making this transfer. With regard to statutory provisions conferring authority on the County Commissioners Court, we are to "broadly and liberally" construe constitutional and statutory provisions concerning the "scope of the authority granted either expressly or by necessary implication." *See Canales*, 214 S.W.2d at 453. In conferring transfer power on the County Commissioners Court, the statute does not contain a "line item" restriction and we will not narrow the scope of authority conferred by that statute to judicially impose one. We overrule Griffin's fourth issue.

**Conclusion**

Indeed, each elected county official has a delegated sphere of authority that cannot be invaded. *See McKenna*, 350 S.W.2d at 335. In the case of a constable, however, that sphere is fairly narrow. *See* Tex. Loc. Gov't Code Ann. § 86.021 (setting out duties of constable). The County Commissioners Court is charged with the legislative function of preparing the budget for the county. *See Hooten*, 863 S.W.2d at 528. That process, involving the "apportionment of the former [revenues] among the various county functions, operations, and programs, *in the overall public interest,* is the essence of the decision making entrusted to the judgment of the Commissioners Court." *Commissioners Court of Caldwell County*, 690 S.W.2d at 934-35. "There could be no clearer grant of discretionary power." *Id.*

21

We have reviewed this case applying a standard giving proper acknowledgment to the doctrine of separation of powers and the deference to legislative acts. We hold that the County Commissioners Court did not abuse its discretion and affirm the trial court's judgment.[11]

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed on Motion for Rehearing

Filed:   September 17, 2008

_____

[11] The language in some cases refers to "invoking" the trial court's supervisory jurisdiction if the County Commissioners Court acts arbitrarily or capriciously, *see, e.g., Vondy v. Commissioners Court of Uvalde County*, 714 S.W.2d 417, 420 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) (invoking district court jurisdiction by alleging that order is voidable as being "arbitrary, capricious, unsupported by substantial evidence or that the court has acted beyond its jurisdiction"), which might suggest that if the trial court does not find an abuse of discretion, it should dismiss for want of subject-matter jurisdiction. However, we have located no cases with such a disposition.