

February 10, 2023

The Honorable Matthew A. Mills
Hood County Attorney
1200 West Pearl Street
Granbury, Texas 76048

**Opinion No. KP-0429**

Re: Authority to determine software systems for county departments (RQ-0470-KP)

Dear Mr. Mills:

You ask whether "the justices of the peace in Hood County have legal recourse if the commissioners court approves a new software system for their offices over their objections[.]"[1] You inform us that "Hood County is in the middle of a software conversion process for numerous offices, which would transition the county from NET Data to Tyler Technologies . . . ." Request Letter at 1. You explain that the conversion process has proven difficult for particular offices, which has delayed the "go live" date with the new software. *See id.* You tell us that "[o]n July 26, 2022, the commissioners court considered a request from the objecting offices to remain with NET Data after the struggles in the conversion process" but that ultimately the commissioners court voted to continue the plan to transition all county offices to Tyler Technologies. *Id.* In particular, you ask us to consider the impact of a Local Government Code provision that makes "every elected official . . . the records management officer for that office." *Id.* (referring to section 203.001 of the Local Government Code). Briefing submitted to this office by several affected county officers and their staff suggests that this provision gives the officers, and not the commissioners court, the right to select the software system that will be used to store and manage records in their individual offices.[2]

---

[1]Letter from Honorable Matthew A. Mills, Hood Cnty. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 2 (Aug. 1, 2022), https://texasattorneygeneral.gov/sites/default/files/request-files/request/2022/RQ0470KP.pdf ("Request Letter").

[2]*See* Letters to Off. of the Att'y Gen., Op. Comm., from Honorable Earl "Dub" Gillum, Hood Cnty. Justice of the Peace, Pct. 4 at 1–3 (Aug. 3, 2022) ("Gillum Brief"); Honorable Katie Lang, Hood Cnty. Clerk at 1 (Aug. 4, 2022) ("Lang Brief"); Mr. Dean Armstrong, Hood Cnty. Chief Deputy Cnty. Clerk at 1 (Aug. 26, 2022) ("Armstrong Brief") (all on file with the Op. Comm.).

**Local Government Code Chapter 203**

Subtitle C of Title 6 of the Local Government Code comprises chapters 201 through 205, known as the Local Government Records Act (the "Act"). *See generally* TEX. LOC. GOV'T CODE §§ 201.001–205.010. With its enactment, the Legislature recognized, among other things, that "the efficient management of local government records is necessary to the effective and economic operation of local and state government[.]" *Id.* § 201.002(1). The Act authorizes the electronic storage of local government record data "in addition to or instead of source documents in paper or other media," subject to standards promulgated by the Texas State Library and Archives Commission. *Id.* § 205.002; *see also id.* § 201.003(7) (defining "local government" to include "all district and precinct offices of a county").

The Legislature assigned specific duties to various county agents in chapter 203, including a "records management officer." TEX. LOC. GOV'T CODE §§ 203.001–.005. Chapter 203 makes each elected county officer the records management officer for his or her office. *See id.* It requires the officer to "adopt a written plan establishing an active and continuing program for the efficient and economical management of the records" of his or her office.[3] *Id.* § 203.005(a). Chapter 203 requires the officer to:

> (1) develop policies and procedures for the administration of an active and continuing records management program;
>
> (2) administer the records management program so as to reduce the costs and improve the efficiency of recordkeeping;
>
> (3) identify and take adequate steps to preserve records that are of permanent value;
>
> (4) identify and take adequate steps to protect the essential records of the office;
>
> (5) ensure that the maintenance, preservation, microfilming, destruction, or other disposition of records is carried out in accordance with the policies and procedures of the records management program and the requirements of this subtitle and rules adopted under it; and
>
> (6) cooperate with the [Library and Archives Commission] in its conduct of statewide records management surveys.

*Id.* § 203.002. Relevant here, "records management" refers to "the application of management techniques to the creation, use, maintenance, retention, preservation, and disposal of records for the purposes of reducing the costs and improving the efficiency of recordkeeping" and

---

[3]The Act authorizes elected officers to instead participate in the records management program operated by the county for non-elective officers and to designate the records management officer for the county program to act as the records management officer for the elected office. *See* TEX. LOC. GOV'T CODE § 203.005(g).

"*includes . . . the management of . . . electronic and other records storage systems.*" *Id.* § 201.003(13) (emphasis added); *see also* WEBSTER'S THIRD NEW INT'L DICTIONARY 1372 (2002) (defining "management" as "the executive function of planning, organizing, coordinating, directing, controlling, and supervising any industrial or business project or activity with responsibility for results").

At the same time, chapter 203 imposes certain duties on a commissioners court with respect to the management of records. *See* TEX. LOC. GOV'T CODE § 203.003. The Legislature directs the commissioners court to "promote and support" the management of county records in order "to enable elected county officers to conform to this subtitle and rules adopted under it[.]" *Id.* § 203.003(1). The commissioners court must also "facilitate the creation and maintenance of records" that document "the organization, functions, policies, decisions, procedures, and essential transactions of each elective office . . . ." *Id.* § 203.003(2); *see also* Tex. Att'y Gen. Op. No. JM-1224 (1990) at 12 (recognizing the "largely supportive" role of the commissioners court pursuant to the Act).

### General Authority of Commissioners Court

But beyond chapter 203, the commissioners court, a constitutionally created body, is the "county's principal governing body," and its "powers and duties . . . include aspects of legislative, executive, administrative, and judicial functions." *Comm'rs Ct. of Titus Cnty. v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997); *see also* TEX. CONST. art. V, § 18(b) (granting a commissioners court "such powers and jurisdiction over all county business, as is conferred by this Constitution" or the Legislature). In particular, the commissioners court's legislative power to create a budget for the various county offices and departments gives it broad discretion to make the decisions it considers appropriate for the overall public interest of the county. *See Griffin v. Birkman*, 266 S.W.3d 189, 194–95 (Tex. App.—Austin 2008, pet. denied); *see also* Tex. Att'y Gen. Op. No. JC-0214 (2000) at 2 ("The principal power of the commissioners court with respect to other county officers . . . is the power of the purse strings.").

Moreover, various other relevant statutes expressly authorize the commissioners court to purchase technological equipment for the county. *See, e.g.*, TEX. LOC. GOV'T CODE §§ 191.008(a) (authorizing the commissioners court to "provide for the establishment and operation of a computerized electronic information system"), 262.030(a) (permitting the commissioners court to use an alternative competitive proposal procedure "for the purchase of . . . high technology items");[4] TEX. CODE CRIM. PROC. art. 102.0173(b)(3)(D) (directing the commissioners court to administer or direct the administration of the county's Justice Court Assistance and Technology Fund, which may be used "to finance . . . the purchase and maintenance of technological enhancements for a justice court, including . . . computer software").

---

[4]A "high technology item" is "a service, equipment, or good of a highly technical nature, including: (A) data processing equipment and software and firmware used in conjunction with data processing equipment[.]" TEX. LOC. GOV'T CODE § 262.022(4)(A).

**Sphere of Authority of an Elected Officer**

This office previously recognized that a commissioners court's broad grant of budgeting and purchasing authority gives the commissioners court the power to "influence the action of other county officials." Tex. Att'y Gen. Op. No. JC-0214 (2000) at 3. The commissioners court's powers, however, are not limitless. In Texas, every "elected officer occupies a sphere of authority, which is delegated to him by the Constitution and laws, within which another officer may not interfere or usurp." *Renken v. Harris Cnty.*, 808 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1991, no writ); *accord Abbott v. Pollock*, 946 S.W.2d 513, 517 (Tex. App.—Austin 1997, writ denied). That sphere of authority consists of "only those duties that the Texas Constitution and statutes specifically delegate to the officer[.]" *Birkman*, 266 S.W.3d at 197. Further, while "the commissioners court, in exercise of its budgetary powers, may take a different view of the importance of certain functions than an elected officer does," the commissioners court may not go so far as to "prevent the elected official from performing those duties required of him." Tex. Att'y Gen. Op. No. JC-0214 (2000) at 5. A justice of the peace is an elected officer. *See* TEX. CONST. art. V, § 18(a). The question here is whether the commissioners court's broad fiscal authority, as exercised by the selection and purchase of computer software for the county, impermissibly interferes with the statutory duty of a justice of the peace as the records management officer for his office.

In looking at the Act, we find that the Legislature delegated to records management officers some degree of authority over the computer software used to fulfill their duties under the Act, as evidenced by the express language defining "records management" to include "the management of . . . electronic and other records storage systems." TEX. LOC. GOV'T CODE § 201.003(13). Accordingly, the commissioners court cannot, for example, tell a records management officer which software features to use or dictate any other aspect regarding how the officer uses the software system. *See* Tex. Att'y Gen. Op. No. GA-0661 (2008) at 2 ("[A]n officer's sphere of authority encompasses the power to determin[e] how to deploy the resources placed at his disposal[.]" (quotation mark omitted)). But "manage" is not synonymous with selection and purchase. Thus, we consider whether the Act implies a justice of the peace's authority to determine which software system to use.

In Opinion GA-0571, this office considered whether a county auditor could determine the financial software that would be used in the auditor's office over the objection of the commissioners court. *See generally* Tex. Att'y Gen. Op. No. GA-0571 (2007). The opinion observed that the county auditor possessed the statutory authority to not only "adopt and enforce regulations" the auditor considered necessary to perform certain functions but also "*purchase*, at the county's expense and in the manner provided by law, necessary . . . equipment" for the auditor's office. *Id.* at 2 (emphasis added) (noting that an appellate court construed these collective provisions to provide an "impressive array of independent administrative duties and discretionary powers" (quoting *Comm'rs Ct. of Harris Cnty. v. Fullerton*, 596 S.W.2d 572, 576 (Tex. Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e))). Based on a court's construction of these two powers, this office concluded the county auditor could choose the financial software for use in the auditor's office. *See id.* at 3. But unlike a county auditor, no provision in chapter 203 or elsewhere authorizes a justice of the peace, as the records management officer, to purchase or designate the equipment the officer will use to perform his or her duties. Thus, we cannot conclude as a matter

of law that a records management officer's authority with respect to the management of the electronic storage system implies the power to select the system. Instead, the commissioners court's exercise of its general budgeting and contracting authority through the purchase of equipment likely does not interfere with a justice of the peace's statutory duty to manage the records of his or her office with the computer software system the county commissioners select.

In examining the records management officer's duties under section 203.002, we note the duties include "administer[ing] the records program so as to reduce the costs and improve the efficiency of recordkeeping[.]" TEX. LOC. GOV'T CODE § 203.002(2). Briefing received by this office from affected county officers and staff suggest that the problems associated with converting to the new software interferes with this particular duty.[5] Whether the facts support this assertion is not an inquiry this office can make. *See* Tex. Att'y Gen. Op. No. KP-0377 (2021) at 2 ("It is not within the authority of this office to determine . . . factual questions." (citing *Parker v. Brown*, 425 S.W.2d 379, 381 (Tex. App.—Tyler 1968, no writ))). Nor can we conclude as a matter of law that the commissioners court's selection of one product over another impermissibly intrudes on the justice of the peace's fulfillment of records management duties under section 203.002 as a whole. Instead, this office has recognized that the commissioners court's overall budgeting and contracting authority gives it the power to select what the county will purchase, even if the officer who will ultimately use the equipment disagrees. *See* Tex. Att'y Gen. Op. No. JC-0214 (2000) at 7.

**Recourse**

Your ultimate question asks what recourse the justices of the peace may have in this situation. *See* Request Letter at 2. Pursuant to the Texas Constitution, a district court exercises "general supervisory control" over the commissioners court. TEX. CONST. art. V, § 8. This power exists only through a properly filed lawsuit in a district court seeking review of the commissioners court's action. *See* Tex. Att'y Gen. Op. No. JM-0708 (1987) at 2. But the Texas Supreme Court has warned that the district court's review power does not allow it to "usurp [the] legislative authority [of the commissioners court] by substituting its policy judgment for that of the commissioners court acting as a legislative body." *Henry v. Cox*, 520 S.W.3d 28, 37 (Tex. 2017). Instead, the district court "can only set aside decisions or actions of the commissioners court that are illegal, unreasonable, or arbitrary . . . ." *Id.*; *see also Ector Cnty. v. Stringer*, 843 S.W.2d 477, 479 (Tex. 1992) ("Once the commissioners court acts, the district court may review the commissioners' orders to determine if they are arbitrary, or otherwise constitute an abuse of discretion."); *Hooten v. Enriquez*, 863 S.W.2d 522, 533 (Tex. App.—El Paso 1993, no writ) (noting the test for abuse of discretion "is a question of whether the court acted without reference to any guiding rules and principles").

---

[5]*See* Gillum Brief at 1; Lang Brief at 1; Armstrong Brief at 1.

## S U M M A R Y

Section 203.001 of the Local Government Code makes a justice of the peace, as an elected county officer, the records management officer for his or her office for purposes of the Local Government Records Act.

We cannot conclude as matter of law that a commissioners court, in selecting and purchasing a computer software system for the county over the objection of the justice of the peace, impermissibly intrudes on the officer's sphere of authority in the fulfillment of the officer's records management duties under the Act.

A justice of the peace seeking recourse would need to challenge the commissioners court's actions by invoking a district court's supervisory jurisdiction in article V, section 8 of the Texas Constitution through a properly filed lawsuit. A district court reviewing the matter may not substitute its policy judgement for that of the commissioners court but may set aside any actions of the commissioners court that are illegal, unreasonable, or arbitrary.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT E. WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN A. KINGHORN
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee