# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00833-CV

**Dan A. Gattis, County Judge of Williamson County; Lisa Birkman, Cynthia Long, Valerie Covey, and Ron Morrison, County Commissioners; David Flores, County Auditor; and Ashlie Koenig, County Budget Officer, Appellants**

**v.**

**Jana Duty, County Attorney of Williamson County, Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 10-1107-C368, HONORABLE JAMES F. CLAWSON JR., JUDGE PRESIDING

## O P I N I O N

In this interlocutory appeal from the denial of a plea to the jurisdiction, the principal issue we must decide is whether the county attorney of Williamson County, in either her individual or official capacity, has standing to sue the county commissioners court for allegedly violating the Open Meetings Act and local government code in the course of making budgetary transfers that negatively impacted the county attorney's office. Concluding that the county attorney does not have standing with respect to any justiciable claim, we must reverse the order denying the plea and render a judgment of dismissal.

## BACKGROUND

Appellants are the constitutional county judge of Williamson County, the Hon. Dan A. Gattis; all four of the county's commissioners, the Hons. Lisa Birkman, Cynthia Long, Valerie Covey, and Ron Morrison; the county auditor, David Flores; and the county's budget officer,

Ashlie Koenig. Appellee is the Hon. Jana Duty, the county attorney for Williamson County. While the two sides indicate that they have, unfortunately, become embroiled in a much larger series of conflicts during recent years, the dispute relevant to this appeal centers on certain county budgetary decisions implemented by appellants during the fall of 2010. In essence, the commissioners court decided to hire its own attorney to provide it legal advice instead of relying on the county attorney's office—and funded the attorney's salary with money originally allocated to the county attorney's departmental budget.

On August 31, 2010, the commissioners court adopted a county budget for the 2010-11 fiscal year, which runs from October 1, 2010 to September 30, 2011. Subsequently, during a public meeting held on September 28, 2010, the commissioners court voted to amend the 2010-11 budget to transfer a total of $101,802.00, previously allocated to the county attorney's office for personnel salaries, taxes, and benefits, to the county judge's office. All parties acknowledge that this transfer was intended to partially fund a new position of "Legal Advisor to the Commissioners Court."

Duty, the county attorney, had attended the September 28 meeting and spoken against the transfer proposal. After her views did not sway the commissioners court, she turned to the judicial courts. On September 30, Duty filed suit against the five members of the commissioners court alleging that the transfer was void under the Open Meetings Act (OMA) because the meeting notice had been deficient. *See* Tex. Gov't Code Ann. § 551.041 (West 2004); *Weatherford v. City of San Marcos*, 157 S.W.3d 473, 485 (Tex. App.—Austin 2004, pet. denied). She sought injunctive relief against the transfer's implementation and attorney's fees as permitted under the OMA. *See* Tex. Gov't Code Ann. § 551.142 (West 2004). Duty obtained a temporary restraining order barring the commissioners from implementing the transfer pending further proceedings.

In response to these developments, the commissioners court opted for a "do-over": it posted notice for a public meeting at which it would take up the transfer proposal again, this time including in the posting a more elaborate description of the proposal's subject matter. On October 5, the commissioners court re-adopted the transfer.

Following the October 5 vote, Duty thrice amended her petition. In her live petition, Duty purports to act in both her individual and official capacities. She has continued to include her claims for relief under the OMA regarding the September 28 meeting, but has not raised any such complaint regarding the October 5 meeting at which the transfer was ultimately re-adopted. Regarding the October 5 adoption, Duty has instead asserted claims under the Uniform Declaratory Judgments Act (UDJA)[1] for declarations that the commissioners court lacked legal authority to make the transfer because it failed to comply with procedures prescribed in two sections of the local government code before taking that action. *See* Tex. Local Gov't Code Ann. §§ 111.0675, .070 (West 2008). Duty also seeks attorney's fees as permitted by the UDJA[2] and injunctive relief barring the transfer. Moreover, in addition to seeking this relief from the commissioners court members, Duty's live petition has added Flores and Koenig as defendants.

We observe, as it ultimately becomes important to our analysis, that Duty's challenge to the lawfulness of the transfer vote on October 5 focuses on whether the commissioners court followed proper procedure in making the transfer, not whether, as a matter of the commissioners court's substantive powers and authority, it could hire its own counsel in lieu of funding a position in the county attorney's office. *See Guynes v. Galveston County*, 861 S.W.2d 861, 863 (Tex. 1993) ("the

---

[1] *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 2008).

[2] *See id.* § 37.009 (West 2008).

3

courts of this state have for the last century upheld the power of a commissioners court to hire counsel to assist it or other officials in carrying out their responsibilities so long as the statutory duties of other county officials are not thereby usurped"). In fact, her counsel acknowledged in the district court that "[t]he Commissioner's Court can hire outside counsel to advise them" and that Duty's complaint regarding the October 5 adoption of the transfer instead

> deals with the procedure for doing that, and ultimately rests on a budget transfer that was taken after the initial budget had been approved where the Commissioner's Court went in with what we claim to be insufficient notice, both under the Open Meetings Act and under the Texas local government code . . . . The substance of our argument . . . is that they improperly made the transfer to fund that position.

The defendants below filed a plea to the jurisdiction. They asserted that Duty lacks standing to bring her OMA claim because the claim—which, again, pertains solely to the notice that preceded the September 28 meeting—was mooted by the October 5 adoption of the transfer, and because Duty has no injury attributable to any violation in connection with the September 28 meeting where she had actual notice of the transfer proposal, appeared at the meeting, and spoke against it. As for Duty's claims under the local government code concerning the October 5 vote, appellants urged that she lacks individual standing because she has no interest distinct from that of the general public, cannot establish taxpayer standing, and does not have official-capacity standing because "a county attorney . . . is without authority to sue the commissioners' court and other county officials absent specific statutory authority." In support of their plea, appellants attached the affidavit testimony of Koenig, the county budget officer. In pertinent part, Koenig explained that the commissioners court transferred funds originally allocated to four line items in the county attorney's departmental budget to the same line items in the county judge's departmental budget, as follows:

4

|  | From | | To |
|  | Dept. 0475 | | Dept. 0400 |
|  | (Office of the County Attorney) | Amount | (Office of the County Judge) |
|  | Line Item: | | Line Item: |
|  | 001100 Salaries | $ 79,476.80 | 001100 Salaries |
|  | 002010 FICA | 6,080.00 | 002010 FICA |
|  | 002020 Retirement | 9,212.00 | 002020 Retirement |
|  | 002030 Insurance | 7.033.20 | 002030 Insurance |
|  | | $101,802.00 | |

Duty did not file any evidence in opposition to the plea. Following a hearing at which only argument was presented,[3] the district court denied the plea in full.[4] This appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 54.014(a)(8) (West 2008).

---

[3] On appeal, Duty urges that we should consider certain assertions made by her counsel during the hearing as "evidence" relevant to the jurisdictional inquiry. The assertions in question were that the "Commissioners are messing with" the budget, "wrongfully[,] . . . prohibiting [Duty] from doing her job effectively." Duty cites *Banda v. Garcia* for the proposition that these assertions are evidence because they went "unchallenged" and because counsel is an officer of the court. 955 S.W.2d 270, 272 (Tex. 1997) (per curiam). *Banda* has no application here. That case involved an attorney who explicitly purported to be "testifying" regarding the existence of a pre-suit settlement. *Id.* Although the attorney was never placed under oath, the supreme court observed that counsel was "clearly attempting to prove the existence and terms of the settlement" and held that opposing counsel had waived any complaint to the admission of that testimony. *Id.* Duty's counsel, by contrast, never purported to testify, such that appellants would have been on notice of the need to object, but presented only argument. Further confirming that counsel's assertions were in the nature of argument rather than testimony, they consisted of unsupported legal conclusions, not factual assertions like those in *Banda*. For the same reasons, we would add that counsel's assertions would have been incompetent to prove any material fact even if they had been presented by a sworn witness on the stand. *See, e.g.*, *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex. 2009) (observing that unsupported legal conclusions are not competent evidence and may not support a judgment even in the absence of an objection); *see also N.C. Sturgeon, L.P. v. Sul Ross State Univ.*, No. 03-01-00716-CV, 2003 Tex. App. LEXIS 331, at (Tex. App.—Austin Jan. 16, 2003, pet. denied) (mem. op.) (noting that phrases such as "wrongfully" constitute legal conclusions, not evidence).

[4] We note that the district court had initially intended to take the plea under advisement but, at the parties' insistence, instead issued a ruling following the hearing.

## ANALYSIS

Appellants bring forward the grounds for dismissal asserted in their plea to the jurisdiction.

**Standard of review**

A plea to the jurisdiction challenges a trial court's authority to decide a specific cause of action. *See Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Analysis of whether this authority exists begins with the plaintiff's live pleadings. *Id.* at 226. The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). Whether the plaintiff met this burden is a question of law that we review de novo. *Id.* We construe the pleadings liberally, taking them as true, and look to the pleader's intent. *Id.*; *Texas Logos, L.P. v. Brinkmeyer*, 254 S.W.3d 644, 659 (Tex. App.—Austin 2008, no pet.). Mere unsupported legal conclusions are insufficient. *See Creedmoor-Maha Water Supply Corp. v. Texas Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515-16 & n.7 & 8 (Tex. App.—Austin 2010, no pet.). If the pleadings fail to allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction but also fail to affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. If, on the other hand, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.* at 227.

When resolving issues presented by the plea to the jurisdiction, we may consider evidence that the parties have submitted and must do so when necessary to resolve the jurisdictional

issues. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). In fact, in a plea to the jurisdiction, a party may present evidence to negate the existence of a jurisdictional fact alleged in the pleadings, which we would otherwise presume to be true. *Miranda*, 133 S.W.3d at 227; *see also Combs v. Entertainment Publ'ns, Inc.*, 292 S.W.3d 712, 719 (Tex. App.—Austin 2009, no pet.). To the extent the evidence presented to negate the jurisdictional fact implicates the merits of the plaintiff's cause of action, the party asserting the plea must present undisputed or conclusive evidence to negate a genuine issue of material fact as to the jurisdictional fact's existence. *See Miranda*, 133 S.W.3d at 227-28. Our ultimate inquiry is whether the plaintiff's pled and un-negated facts, taken as true, and liberally construed with an eye to the pleader's intent, affirmatively demonstrate a claim or claims within the trial court's subject-matter jurisdiction. *See id.* at 226; *Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 513, 516 n.8. This is a question of law that we review de novo. *See Miranda*, 133 S.W.3d at 22; *Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 513, 516 n.8.

**Open Meetings Act claim**

Appellants urge that the district court erred in denying their plea as to Duty's OMA claim because the claim was rendered moot by the October 5 adoption of the transfer and that Duty incurred no injury from any notice defect before the September 28 meeting that could give rise to standing. We need only address the former contention, as it is dispositive. *See* Tex. R. App. P. 47.1.

Duty acknowledges that there is no longer a live, justiciable controversy as to whether the transfer is void under the OMA because the commissioners court ultimately re-adopted the transfer on October 5 and she does not allege any OMA violations in regard to that proceeding. But Dusty insists that a justiciable controversy still remains as to the September 28 meeting by virtue of her

attorney's fee claim under the OMA. In support, Duty cites this Court's analysis in *Griffin v. Birkman*, 266 S.W.3d 189, 194 (Tex. App.—Austin 2008, pet. denied).

In *Griffin*, the plaintiff, a former constable—in Williamson County, it so happens—sued the commissioners court under the UDJA seeking declaratory and injunctive relief and attorney's fees in regard to a transfer of budgeted funds from his department to another department during fiscal year 2006. *Id.* at 193. In the interim before this Court's ruling, fiscal year 2006 concluded and the county commenced operating under the new budget for fiscal year 2007. *Id.* This Court rejected arguments that the end of fiscal year 2006 had wholly ended the controversy over the transfers because, the Court observed, Griffin had asserted an attorney's fee claim under the UDJA. *See id.* at 193-94. If Griffin prevailed on appeal, as this Court observed, it would have been necessary to remand the case to the trial court to reconsider, in light of this Court's judgment, whether awarding attorney's fees to Griffin would have been equitable and just. *Id.* at 194; *see* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). To that extent, this Court held that Griffin's claims were not moot. *Griffin*, 266 S.W.3d at 194.

Although Duty is correct that a pending attorney's fee claim may in some circumstances preserve a live controversy with respect to an otherwise-moot cause of action,[5] her attorney's-fee claim does not have such an effect here. Duty's attorney's-fee claim is predicated on the OMA, which, unlike the UDJA in *Griffin*, is a "prevailing-party" statute—the trial court is authorized to award fees only if and when a party "substantially prevails." Tex. Gov't Code Ann. § 551.142(b); *cf.* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 ("[i]n any proceeding under this chapter, the court may award costs and

---

[5] In addition to *Griffin*, *see, e.g.*, *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 642-43 (Tex. 2005) (holding, in a UDJA case, that appellee's "interest in obtaining attorney's fees 'breathes life' into this appeal and prevents it from being moot").

reasonable and necessary attorney's fees as are equitable and just"). Whether a party "prevails" under the meaning of such a statute turns on whether there has been a material alteration in the legal relationship between the parties. *See Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 656 & n.27 (Tex. 2009) ("a plaintiff must receive affirmative judicial relief to be considered a prevailing party"; deciding that plaintiff's nominal "success affords no actual relief on the merits that would materially alter [plaintiff's] relationship with [defendant]"); *Wibbenmeyer v. TechTerra Commc'ns, Inc.*, No. 03-09-00122-CV, 2010 Tex. App. LEXIS 2203, at *33 (Tex. App.—Austin Mar. 26, 2010, pet. denied) (mem. op.). There has been no such material alteration here because Duty never obtained affirmative relief on the merits of her OMA claim seeking to invalidate the September 28 adoption of the transfer before the claim was rendered moot by the October 5 re-adoption.

Although Duty obtained a temporary restraining order, such an order merely preserves the status quo temporarily pending proceedings that could actually alter the parties' legal relationship. *See In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) ("The purpose of a TRO is to preserve the status quo."); *Wibbenmeyer*, 2010 Tex. App. LEXIS 2203, at *27. Nor did Duty "prevail" when the commissioners court opted to re-notice and re-approve the transfer on October 5. *Speer v. Presbyterian Children's Home & Serv. Agency*, 847 S.W.2d 227 (Tex. 1993) (holding that where plaintiff's claims for declaratory and injunctive relief were rendered moot, plaintiff "could never be a prevailing party" "and is thus not entitled to recover her attorneys fees and costs"). Instead, the events of October 5 served only to render her OMA claim moot. Consequently, the district court lacked subject-matter jurisdiction over that claim. *See University of Tex. Med. Branch at Galveston v. Estate of Blackmon*,

9

195 S.W.3d 98, 100-01 (Tex. 2006) (per curiam) (mootness deprives courts of subject-matter jurisdiction over the claims).

**Local government code claims**

*Individual standing*

*General test*

As to the remainder of Duty's claims, which seek relief under the UDJA concerning alleged violations of the local government code in connection with the October 5 re-adoption vote, appellants assert that Duty lacks standing in her individual capacity because she can establish no injury distinct from that incurred by the general public. Similar to the U.S. Constitution, the Texas Constitution requires that a party have standing to bring a claim in court, and the general test is whether there is a controversy between the parties that will actually be determined by the judicial declaration sought. *Stop the Ordinances Please v. City of New Braunfels*, 306 S.W.3d 919, 925 (Tex. App.—Austin 2010, no pet.) (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). "Constitutional standing is thus concerned not only with whether a justiciable controversy exists, but whether the particular plaintiff has a sufficient personal stake in the controversy to assure the presence of an actual controversy that the judicial declaration sought would resolve." *Id.* at 925-26 (citing *Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998); *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996)). To have standing, a plaintiff must "allege some injury distinct from that sustained by the public at large." *Brown v. Todd*, 53 S.W.3d 297, 302 (Tex. 2001). In other words, the plaintiff must show that he or she

> has or imminently will suffer an invasion of some legally cognizable interest that is
> sufficiently unique to the plaintiff, as distinguished from the general public, to ensure

10

that the plaintiff has a sufficient personal stake in the controversy so that the lawsuit would not yield a mere advisory opinion or draw the judiciary into generalized policy disputes that are the province of the other branches.

*Stop the Ordinances Please*, 306 S.W.3d at 927. The alleged injury must be "fairly traceable to the defendant's allegedly unlawful conduct," "likely to be redressed by the requested relief," and "concrete and particularized," such that the plaintiff has a personal stake in the dispute. *Brown*, 53 S.W.3d 297 at 305.

Duty alleges that the commissioners court failed to comply with sections 111.0675 and 111.070 of the local government code before adopting the transfer. Section 111.0675 requires that the commissioners court publish notice of a hearing "relating to a budget" not "later than the 10th day before the date of the hearing." *See* Tex. Loc. Gov't Code Ann. § 111.0675. Section 111.070 sets forth procedures whereby a commissioners court may alter a budget that it previously has approved:

(a)   The commissioners court may spend county funds only in strict compliance with the budget, except as provided by this section.

(b)   The commissioners court may authorize an emergency expenditure as an amendment to the original budget only in a case of grave public necessity to meet an unusual and unforeseen condition that could not have been included in the original budget through the use of reasonably diligent thought and attention. If the court amends the original budget to meet an emergency, the court shall file a copy of its order amending the budget with the county clerk and the clerk shall attach the copy to the original budget.

(c)   The commissioners court by order may:

(1)   amend the budget to transfer an amount budgeted for one item to another budgeted item without authorizing an emergency expenditure; or

(2)   designate the county budget officer or another officer or employee of the county who may, as appropriate and subject to conditions and

11

> directions provided by the court, amend the budget by transferring amounts budgeted for certain items to other budgeted items.

*Id.* § 111.070.

As appellants suggest, any individual, personal stake that Duty possesses in obtaining declarations that these statutes have been violated would be common to members of the general public. On appeal, Duty tacitly acknowledges as much, urging that she has incurred a particularized injury because the transfer affected her "as a taxpayer" and "as the county attorney."[6]

### *Taxpayer standing*

Taxpayer standing is a long-established exception to the general rule that an individual must show that they have suffered a particularized injury distinct from that suffered by the general public in order to have standing to challenge a government action or assert a public right. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 556; *Texans Uniting for Reform & Freedom v. Saenz*, 319 S.W.3d 914, 919 (Tex. App.—Austin 2010, no pet.). A taxpayer has standing to sue in equity to enjoin the illegal expenditure of public funds, even without showing a distinct injury. *Bland Indep. Sch. Dist.*, 34 S.W.3d at 556; *Texans Uniting for Reform & Freedom*, 319 S.W.3d at 919. As the Texas Supreme Court has explained,

> When a taxpayer brings an action to restrain the illegal expenditure by the commissioners' court of tax money he sues for himself, and it is held that his interest in the subject matter is sufficient to support the action; but when the money has already been spent an action for its recovery is for the county. The cause of

---

[6] Duty also suggests that the UDJA independently confers standing to seek a declaratory judgment to determine his or her "rights, status, or other legal relations thereunder." *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004. To the contrary, it is well-established that the UDJA does not confer subject-matter jurisdiction to resolve a controversy that is not otherwise justiciable. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996) (orig. proceeding) (per curiam).

> action belongs to it alone. Our courts do not recognize the right of one to bring a law suit for another merely because he might derive some indirect benefit therefrom. A taxpayer would be benefitted through the collection by the county of delinquent taxes owing by other property owners, but his interest is not of a nature to authorize him to prosecute tax suits.

*Hoffman v. Davis*, 100 S.W.2d 94, 96 (Tex. 1937); *accord Texans Uniting for Reform & Freedom*, 319 S.W.3d at 920. The requirement that the action be to restrain an illegal expenditure overlaps somewhat with the ultra-vires exception to sovereign or governmental immunity, through which a claimant can sue a government official in his official capacity for prospective injunctive or declaratory relief to restrain the official from exceeding statutory authority. *Texans Uniting for Reform & Freedom*, 319 S.W.3d at 920 (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-77 (Tex. 2009)).

To have standing as a taxpayer, Duty must allege and ultimately prove that (1) she is a taxpayer to Williamson County and (2) the county's expenditures pursuant to the transfers are illegal by virtue of the commissioners court having violated local government code section 111.0675 or 111.070, or both. *See id.* at 919-20. Appellants do not dispute that Duty is a taxpayer to Williamson County, but urge that her pleading allegations and the undisputed evidence negate, as a matter of law, any violation of sections 111.0675 or 111.070 on which taxpayer standing could be predicated.[7]

Section 111.0675, as previously noted, requires that the "commissioners court shall publish notice before a public hearing relating to a budget in at least one newspaper of general circulation in the county." Tex. Local Gov't Code Ann. § 111.0675(a). This notice "shall be published

---

[7] Appellants also urge that even if these sections were violated, such a fact would not render the expenditures at issue "illegal" in the sense required for taxpayer standing. They rely on a distinction between "illegal" or "void" governmental actions and "voidable" ones, and insist that violations of the local government code could only amount to the latter. *See Henn v. City of Amarillo*, 301 S.W.2d 71, 75 (Tex. 1957); *Osborne v. Keith*, 177 S.W.2d 198, 200 (Tex. 1944). In light of the analysis that follows, we need not address this argument.

not earlier than the 30th or later than the 10th day before the date of the hearing." *Id.* § 111.0675(a). Duty alleges that the commissioners court neither published notice in the newspaper nor provided ten days' notice of the October 5 meeting. Thus, Duty urges, the commissioners court violated section 111.0675. While not attempting to negate Duty's factual allegations, appellants attack her legal conclusion that these facts would establish a violation of section 111.0675. Specifically, appellants argue that section 111.0675, as a matter of statutory construction, applies to only the hearing on the proposed annual budget—e.g., the one approved on August 31, 2010—not transfers like those at issue here.

Statutory construction presents a question of law that we review de novo. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In construing a statute, our primary objective is to give effect to the Legislature's intent. *Id.* We seek that intent "first and foremost" in the statutory text. *Lexington Ins. Co. v. Strayhorn*, 209 S.W.3d 83, 85 (Tex. 2006). "Where text is clear, text is determinative of that intent." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g) (citing *Shumake*, 199 S.W.3d at 284; *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 651-52 (Tex. 2006)). We consider the words in context, not in isolation. *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). We rely on the plain meaning of the text, unless a different meaning is supplied by legislative definition or is apparent from context, or unless such a construction leads to absurd results. *See Entergy Gulf States, Inc.*, 282 S.W.3d at 437; *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625-26 (Tex. 2008); *see also* Tex. Gov't Code Ann. § 311.011 (West 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage," but "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

14

As appellants observe, the two local government code sections at issue appear in a subchapter that governs "budget preparation" in counties with a population above 125,000. *See* Tex. Local Gov't Code Ann. §§ 111.061-.075 (West 2008).[8] The subchapter refers to a single "hearing" on "the budget," for the purpose of adopting the *annual* budget. *E.g.*, *id.* §§ 111.063 (requiring budget officer to itemize "the budget"), .068(a) (requiring commissioners to take action on the budget after "the public hearing"). Section 111.0675 is sandwiched between the section that requires the commissioners court to hold a "public hearing" on "the budget," *id.* § 111.067(a), and a section requiring commissioners to take action on "the budget" following the public hearing, *id.* § 111.068(a). Only after these and further provisions addressing the annual budget does any mention of adjustments to the previously adopted budget appear—in the provisions governing "emergency expenditure" and "budget transfer" in section 111.070. *Id.* §§ 111.070(b), (c). Viewed in context, section 111.0675 plainly specifies the manner and time frame in which notice of the public hearing on the annual budget is required. Nothing in the subchapter purports to extend section 111.0675's requirements to anything other than adoption of the annual budget. *Id.* §§ 111.061-.075. Consequently, Duty has alleged only conduct that does not, as a matter of law, constitute a violation of 111.0675, and thus cannot give rise to taxpayer standing by virtue of that provision.

Duty, for the most part, does not join issue with appellants' statutory-construction arguments, but urges instead that we should not reach them because they go to the "merits" of her claim. *See Bland Indep. Sch. Dist.*, 34 S.W.3d at 554 (recognizing that courts should not "delv[e] into the merits of the case" beyond the extent necessary to determine jurisdiction). Duty is correct in observing that appellants' statutory-construction arguments implicate the merits of her claims.

_____

[8] The parties do not dispute that Williamson County has a population of over 125,000 people.

15

However, determining whether the facts Duty has alleged constitute a violation of section 111.0675 is an inherent and proper part of the jurisdictional inquiry where Duty is relying on taxpayer standing. *Texans Uniting for Reform & Freedom*, 319 S.W.3d at 931; *Hendee v. Dewhurst*, 228 S.W.3d 354, 368 (Tex. App.—Austin 2007, pet. denied). And, as we explained in *Hendee*, with specific reference to the overlapping or parallel ultra-vires analysis:

> To the extent that Plaintiffs suggest that it is categorically improper to adjudicate, through a jurisdictional plea, jurisdictional issues that implicate or overlap the merits, that notion is belied by *Miranda*. *See* [*Texas Dep't of Parks & Wildlife v.*] *Miranda*, 133 S.W.3d 217,] 227-28 [(Tex. 2004)] (regarding whether parks and wildlife department acted with gross negligence so as to waive sovereign immunity under the recreational use statute). It is also well-established that where a trial court's jurisdiction depends upon whether a state official's acts are within her constitutional or statutory authority, such as when a plaintiff alleges ultra vires action to avoid sovereign immunity, the trial court may sometimes be able to decide the jurisdictional issue as a matter of law based on the pleadings by construing the constitutional and statutory provisions defining the actor's authority and ascertaining whether the acts alleged would exceed that authority. *See, e.g.*, *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied) (acknowledging that in determining whether declaratory judgment suit may be maintained against a state official, it was first necessary, in light of sovereign immunity principles, to construe statutes defining official's powers to "decide whether the [official] validly exercised her discretion or acted outside of her legal authority"); *cf. Director of Dep't of Agric. & Env't v. Printing Indus. Ass'n*, 600 S.W.2d 264, 265-70 (Tex. 1980) (construing constitution to determine whether plaintiff alleged ultra vires action by state officials; state had raised issue via special exceptions). And *Miranda* would further allow jurisdictional challenges, via its summary judgment-like process, to the existence of the alleged acts that are asserted to have been beyond the actor's constitutional or statutory authority.

*Hendee*, 228 S.W.3d at 368-69. By the same token, it is not enough that Duty has pled legal conclusions that the commissioners court violated section 111.0675—her burden is to allege *facts* that would constitute violations of the statute. *See Creedmoor-Maha Water Supply Corp.*, 307 S.W.3d at 515-16 & nn.7-8. She has not.

16

Duty further suggests that the applicability of section 111.0675 presents "fact questions" and that she should be "afforded an opportunity to investigate . . . more fully" appellants' argument that 111.0675 does not apply to the October 5 meeting. But whether 111.0675 applies only to the hearing on the proposed annual budget or whether it applies to any meeting regarding the budget or budget transfers does not require factual investigation—it is a matter of statutory construction that is properly resolved at the jurisdictional stage, without further delay. *See id*. at 516 n.8 ("While genuine disputes over the existence of facts material to jurisdiction will preclude dismissal, *see Miranda*, 133 S.W.3d at 227-28, the pure legal question of whether pled and un-negated facts would establish a constitutional violation or ultra vires conduct can—and must—be resolved to determine the trial court's jurisdiction, and this is true regardless of whether that issue parallels the merits. *Hendee I*, 228 S.W.3d at 368-69; *see also Miranda*, 133 S.W.3d at 227 (emphasizing that jurisdictional issues should be resolved "as soon as practicable"). In sum, the facts Duty alleges do not, as a matter of law, invoke taxpayer standing with respect to local government code 111.0675.

The same is true with respect to local government code 111.070. Duty asserts in part that the commissioners court violated section 111.070, subsection (b), because it did not make the finding of an "emergency" required thereunder. *See* Tex. Loc. Gov't Code Ann. § 111.070(b). However, as appellants point out, subsection (b) is one of two alternative means by which a commissioners court may deviate from strict compliance with the previously adopted annual budget—the other is the "transfer" of "an amount budgeted for one item to another budgeted item without authorizing an emergency expenditure." *Id.* § 111.070(b), (c). Consequently, Duty's allegations regarding the absence of an "emergency" declaration would not state a violation of section 111.070 if the pleadings and evidence establish compliance with (c).

Duty argues that because the money was going to be used to pay for the new position of "legal advisor to the commissioners court," it was not a transfer from one "budgeted item" to another permitted under subsection (c), but an entirely new "budgeted item" not previously included. However, Duty acknowledges that the Williamson County budget is not organized by job titles, but is instead by categories such as "Salaries," "FICA," "Retirement," and "Insurance." And she did not present evidence to controvert Koenig's testimony that the commissioners court transferred funds from line items for "Salaries," "FICA," "Retirement," and "Insurance" in her departmental budget to corresponding line items in the county judge's departmental budget. *See Miranda*, 133 S.W.3d at 227-28. In *Griffin*, this Court upheld the legality of this sort of transfer under subsection (c). 266 S.W.3d at 198. We noted:

> The Williamson County budget does not show individual salaries as separate line items; each department's budget simply shows a total for salaries, FICA, and other categories of expenditures. . . . The transfer budget tracks the format of the county budget with a lump-sum line item for FICA, retirement, and other categories of expenses. The transfer was from one budget item to another, as specified in the statute.

*Griffin*, 266 S.W.3d at 201-02. As in *Griffin*, the commissioners court's transfers at issue here were from one budget item to another. Consequently, Duty has alleged facts that do not, as a matter of law, constitute a violation of section 111.070. Therefore, she does not have standing as a taxpayer to complain of violations of that provision. *See Texans Uniting for Reform & Freedom*, 319 S.W.3d at 920.

*Official-capacity standing*

In the alternative, Duty claims standing in her official capacity to assert her claims regarding local government code 111.0675 and 111.070. Appellants argue that Duty cannot possess standing to sue the county in her official capacity because, in essence, she *is* the county when acting in her official duties, as is the commissioners court, and only the commissioners court has power to decide when the county can bring suit. In support, appellants rely on authorities dating back to *Looscan v. Harris County*, 58 Tex. 511, 514 (1883). In *Looscan*, the Texas Supreme Court held that, absent the consent of the commissioners court, the district attorney could not institute an action in the name of the county to recover and prevent further payments to a county attorney hired by the commissioners court. *Id.* The court reasoned in part that the claims asserted by the district attorney belonged to the county and that the district attorney in his official role had no interest distinct from that of the county. *Id.* at 516. Similarly, in *Driscoll v. Harris County Commissioners Court*, the court of appeals concluded that the county attorney lacked the requisite justiciable interest to attack expenditures of county funds. 688 S.W.2d 569, 583 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *see Travis County v. Matthews*, 235 S.W.2d 691, 697 (Tex. Civ. App.—Austin 1950, writ ref'd n.r.e) (county attorney could not litigate on county's behalf without the commissioners court's permission).

The core rationale underlying these cases is that there was no justiciable controversy between the county and the attorney, in his or her official capacity, because the interests of the two were aligned. Other cases suggest that there may exist circumstances in which a county attorney, in his or her official capacity, may have a justiciable interest in a controversy that diverges from that of other county officials, as routinely occurs among different state officials and agencies. *See Cascos v. Cameron County Attorney*, 319 S.W.3d 205, 224-26 (Tex. App.—Corpus Christi 2010, no pet.)

("[county attorney] was entitled to file his declaratory judgment action to clarify his rights and responsibilities as the Cameron County Attorney"); *see Terrell v. Greene*, 31 S.W. 631, 634 (Tex. 1895) (county attorney successfully sought mandamus to compel county judge to allow him to prosecute suit against county treasurer who had mishandled county funds because refusing to do so would "deprive the county attorney of the right to discharge a duty imposed on him as an officer of that county").

In ascertaining whether Duty, in her official capacity as county attorney, could possess a justiciable interest that is distinct from that of the commissioners court in regard to whether the latter complied with the local government code when making the transfer on October 5, we return to our earlier observation that the commissioners court undisputedly possesses the ultimate authority to hire its own counsel if it so wishes. *See Guynes*, 861 S.W.2d at 863. Although a county official may possess a core "sphere of authority" into which the commissioners court may not intrude or interfere, as we noted in *Griffin*, 266 S.W.3d at 198, there is no allegation that the October 5 transfers constituted that sort of interference with Duty's delegated functions. *See Guynes*, 861 S.W.2d at 863 (affirming summary judgment in favor of commissioners court because criminal district attorney did not have *exclusive* right to represent county in civil matters; therefore, the commissioners court was not usurping his functions by hiring civil counsel). Duty's complaints with the transfers, again, solely concern the procedure that the commissioners court followed when making the transfer. Assuming Duty's interest as county attorney in regard to that complaint could, in theory, diverge and be adverse to that of the county, that interest, like her individual interest, would merely be common with that possessed by the other citizens of Williamson County. Consequently, Duty lacks standing in her official capacity.

20

*See Stop the Ordinances Please*, 306 S.W.3d at 927 (requiring injury distinct from that of the general public).[9]

## CONCLUSION

We conclude that Duty lacks standing to pursue any justiciable claim against appellants. Furthermore, as previously demonstrated, these jurisdictional defects are not the sorts of omissions that may be cured by repleading, but are instead a function of pled or undisputed facts that affirmatively negate jurisdiction. *See Miranda*, 133 S.W.3d at 227. Consequently, we reverse the district court's order denying appellants' plea to the jurisdiction, grant the plea, and render judgment dismissing Duty's claims for want of subject-matter jurisdiction.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Reversed and Rendered

Filed: August 24, 2011

---

[9] We further observe that our analysis of Duty's taxpayer standing would likewise foreclose her from asserting the same claims in her official capacity— arguably jurisdictionally, by rendering the claims moot, or at least on the merits.

21