
June 26, 2026

The Honorable Gary D. Trammel
Stephens County Attorney
200 West Walker, Room 206
Breckenridge, Texas 76424

**Opinion No. KP-0522**

Re: Miscellaneous questions regarding commissioners court authority over employees of local elected officials (RQ-0610-KP)

Dear Mr. Trammel:

At the request of the Stephens County Commissioners Court, you ask about the county's employment practices.[1] You explain that, approximately five years ago, the commissioners court implemented a courthouse "[e]mployee [p]ool" "with the agreement of the then elected officials." Request Letter at 1. Some of the characteristics of the employee pool are that: (1) employee salaries are "funded entirely through the [c]ommissioners [c]ourt's budget" rather than an "individual elected office holder's budget"; (2) employees are "cross-trained to work in all . . . elected officials' offices to provide flexibility across all departments"; (3) hiring for a vacancy in an elected official's office is initiated by the official, but the commissioners court must "interview and vet" the top three candidates prior to hiring any individual; (4) elected officials "recommend their preferred candidate" to fill a vacancy, and the commissioners court is not to "dictate who is hired or override the official's selection"; (5) the commissioners court reviews and approves all new employees "for bonding" and "legal eligibility"; and (6) "all employees are under the [commissioners court's] control as members of" the pool and, as a result, are subject to a variety of policies set out in "the County Policy Manual." *Id.* at 1–2.

Against this backdrop, you ask twenty questions that primarily concern the interplay between the commissioners court and other county officials in this context. *Id.* at 3–4. For ease of disposition, we address your questions by subject matter. We respond generally and note that additional facts, such as the elected official or employment position at issue, "may result in a different conclusion in a given case." Tex. Att'y Gen. Op. No. KP-0446 (2023) at 1 n.2 (quoting Tex. Att'y Gen. Op. No. JC-0203 (2000) at 2).

---

[1] *See* Letter from Hon. Gary D. Trammel, Stephens Cnty. Att'y, to Hon. Ken Paxton, Tex. Att'y Gen. at 1–4 (Aug. 18, 2025), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2025/RQ0610KP.pdf ("Request Letter").

**A commissioners court may not usurp elected officials' core duties.**

We begin with a brief discussion of the respective spheres of authority of the commissioners court and county elected officials. The commissioners court is "the county's principal governing body," *Comm'rs Ct. of Titus Cnty. v. Agan*, 940 S.W.2d 77, 79 (Tex. 1997), whose "primary function is to administer its county's business affairs," *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 27–28 (Tex. 2003). It exercises only such powers as the law specifically confers. *See* TEX. CONST. art. V, § 18(b); *City of San Antonio*, 111 S.W.3d at 28. Duties expressly assigned to the commissioners court include the implied authority to exercise powers necessary to accomplish those duties. *City of San Antonio*, 111 S.W.3d at 28. A commissioners court may not, of course, act contrary to state law. *See Guynes v. Galveston Cnty.*, 861 S.W.2d 861, 863 (Tex. 1993) (stating commissioners court's actions "must be grounded ultimately in the constitution or statutes").

Other elected officials also manage and control county affairs. *See Pritchard & Abbott v. McKenna*, 350 S.W.2d 333, 335 (Tex. 1961). Each officer has an exclusive "sphere of authority" consisting of his or her "core duties"—*i.e.*, those duties "that the Texas Constitution and statutes specifically delegate to the officer." *Griffin v. Birkman*, 266 S.W.3d 189, 197 (Tex. App.—Austin 2008, pet. denied). Discretionary duties falling outside an officer's "core duties" are not included in this protected "sphere of authority." *Id.* A commissioners court may not usurp or unreasonably interfere with an official's sphere of authority. *See Pritchard & Abbott*, 350 S.W.2d at 335; *Harris Cnty. v. Coats*, 607 S.W.3d 359, 377 (Tex. App.—Houston [14th Dist.] 2020, no pet.). With those preliminary observations in mind, we turn to your questions.

**Advertising for an Employment Position**

We first consider if "an elected official" must "publicly advertise for a job opening in their office" in locations such as the newspaper, local radio, or the county website, or whether "simply advertis[ing] on" a "private Facebook page" is permissible. Request Letter at 3. There are no doubt instances when an elected official must publicly advertise an employment position. For example, the district and county court judges charged with appointing the director of a community supervision and corrections department must "publicly advertise the position." TEX. GOV'T CODE § 76.004(h)(1). But we find no statute that imposes such a requirement on county elected officials, generally. *See, e.g.*, TEX. LOC. GOV'T CODE §§ 151.001–.004 (setting out general provisions governing district, county, and precinct officials' authority to appoint employees); *cf. also* Tex. Att'y Gen. Op. No. GA-0126 (2003) at 9 ("We are not aware of any statute governing district courts that requires a judge to select an associate judge by posting the position and interviewing candidates."). Neither do you suggest otherwise. S*ee* Request Letter at 4–5. We nonetheless caution that plaintiffs may use an elected official's failure to advertise a position or decision to advertise in a limited area as evidence to assert that hiring practices are discriminatory. *See, e.g.*, *Edelstein v. City of Brownsville*, No. 1:19-CV-00042, 2019 WL 13041329, at *2 (S.D. Tex. Nov. 13, 2019) (alleging city failed to post position in order to exclude female applicants), *aff'd*, No. 20-40211, 2021 WL 4096581 (5th Cir. Sept. 8, 2021); *Bradley v. T-Mobile US, Inc.*, No. 17-CV-07232-BLF, 2020 WL 1233924, at *1–2 (N.D. Cal. Mar. 13, 2020) (alleging targeting job ads on Facebook excluded prospective job applicants over the age of forty); *see also* Tex. Att'y Gen. Op. No. H-1045 (1977) at 2 (noting recruitment practices have been challenged as discriminatory).

**Interviewing for an Employment Position**

We next consider whether a commissioners court may "require an elected official to bring their top three . . . applicants for a staff" position to the commissioners court so it may "interview and vet each candidate," provided it does "not dictate who is hired or override the official's selection." Request Letter at 1–3. Together with this question, we also consider whether the commissioners court may "influence the hiring of any member of an elected official's staff." *Id.* at 3. Given your invocation of Local Government Code chapter 151, *see id.* at 4–5, we analyze these issues in relation to a "district, county, or precinct officer" who is seeking to hire a deputy, assistant, or clerk, *see* TEX. LOC. GOV'T CODE § 151.001. *See generally id.* §§ 151.001–.004 ("General Employment Authority").

Under Chapter 151, "[a] district, county, or precinct officer who requires the services of deputies, assistants, or clerks in the performance of the officer's duties shall apply to the commissioners court . . . for the authority to appoint the employees."[2] *Id.* § 151.001(a). Upon receiving the application, "the commissioners court by order shall determine the number of employees that may be appointed and shall authorize their appointment." *Id.* § 151.002. The officer may fill the requested positions only after the commissioners court issues an order approving, in whole or in part, the officer's request. *Id.* § 151.003. Once a commissioners court has authorized the appointment, "[t]he commissioners court or a member of the court" is prohibited from "attempt[ing] to *influence* the appointment of any person to" the position. *Id.* § 151.004 (emphasis added). We consider the meaning of the term "influence" to answer your question.

Chapter 151 must be read "to give effect to the Legislature's intent, 'which we ascertain from the plain meaning of the words used in the statute.'" *Brazos Elec. Power Coop., Inc. v. Tex. Comm'n on Env't Quality*, 576 S.W.3d 374, 383–84 (Tex. 2019) (quoting *Sw. Royalties, Inc. v. Hegar*, 500 S.W.3d 400, 404 (Tex. 2016)). The term "influence" is not defined in the statute, so we consider its common, ordinary meaning by looking to relevant dictionary definitions. *See Tex. State Bd. of Exam'rs of Marriage & Fam. Therapists v. Tex. Med. Ass'n,* 511 S.W.3d 28, 34–35 (Tex. 2017). "Influence" means "the action or process of producing effects on the actions, behavior, opinions, etc., of another or others." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 980 (2d ed. 1987); *accord* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 641 (11th ed. 2004).

The commissioners court and its individual members are therefore prohibited from attempting any action or process that affects the action, behavior, or opinion of an elected official as to an appointment authorized under Local Government Code section 151.002. TEX. LOC. GOV'T CODE § 151.004. This comports with the purpose of the prohibition, which is "founded in the policy that elected officers[] . . . discharge the public trust and carry the responsibility for the

---

[2] "If the county has a population of more than 190,000," of course, "the officer shall apply for the authority to appoint any other kinds of employees." TEX. LOC. GOV'T CODE § 151.001(a). But that requirement is not relevant here because the population of Stephens County as of the last federal decennial census is 9,101. *See* U.S. CENSUS BUREAU, https://data.census.gov/profile/Stephens_County,_Texas?g=050XX00US48429 (last visited June 26, 2026); *see also* TEX. GOV'T CODE § 311.005(3) (defining "[p]opulation" for statutory construction purposes as "the population shown by the most recent federal decennial census").

proper discharge of that trust, and therefore, should be free to select persons of their own choice to assist them." *Abbott v. Pollock*, 946 S.W.2d 513, 517 (Tex. App.—Austin 1997, writ denied).

A commissioners court or individual commissioner would most certainly run afoul of the section 151.004 prohibition by dictating the person to be hired or overriding the elected official's decision about who to hire, as the commissioners court has "no power over naming the individuals to be appointed" by the officer. *Hooten v. Enriquez*, 863 S.W.2d 522, 529 (Tex. App.—El Paso 1993, no writ). But the term "influence" also extends beyond those actions. For instance, precedent applying a prior version of section 151.004 confirms that a commissioners court "has no legal right to screen applicants" for a position in the office of an elected official. *Renfro v. Shropshire*, 566 S.W.2d 688, 691–92 (Tex. App.—Eastland 1978, writ ref'd n.r.e.).

Here, you indicate the commissioners court interviews and vets applicants to determine whether they "like" an applicant, which is then communicated to the elected official. *See* Request Letter at 3 (asking what the commissioners court may "do" to the elected official if the official wants to hire an applicant the court does not "like"). The interviews are thus functionally aimed at influencing the action, behavior, or opinion of the officer as to an appointment authorized under Local Government Code section 151.002. To the extent that is the case, the interviews—in addition to other processes that attempt to influence an appointment—are impermissible.[3] *See* TEX. LOC. GOV'T CODE § 151.004.

You also ask whether human resources or a county treasurer appointed to serve as the head of human resources[4] (collectively, "human resources department") may "take any measure[]s to influence the hiring of any member of an elected official's staff." Request Letter at 2–3. We cannot speculate on all possible measures that a human resources department may take in the hiring process. *See, e.g.*, Tex. Att'y Gen. Op. No. GA-0857 (2011) at 4 (explaining that we do not resolve questions of fact in the opinion process). We do, however, observe that a commissioners court cannot circumvent the section 151.004 prohibition simply by having a human resources department take action to influence an appointment on its behalf. *See Renfro*, 566 S.W.2d at 689, 691–92 (concluding commissioners court had no legal right, under a prior version of section 151.004, to implement a policy that prohibited an elected official from employing a person "without the permission of a personnel coordinator appointed by the commissioners court").

**Reducing Number of Employees or Employee Pay**

Once employees have been hired, you ask whether a commissioners court may reduce an elected official's "staff or reduce the pay for the staff prior to the new budget year taking effect." Request Letter at 3. As previously explained, the commissioners court generally "determine[s] the number of employees that may be appointed" by a district, county, or precinct officer. TEX. LOC. GOV'T CODE § 151.002. And the commissioners court "set[s] the salaries of most county

---

[3] As a result of this conclusion, we do not address what the commissioners court "can do" "[i]f the elected official refuses to bring applicants to the Court for interviews." *See* Request Letter at 3.

[4] We understand all your questions regarding the county treasurer to mean the treasurer acting in the capacity of the head of human resources. *See id.* at 2 (stating the commissioners court "has given authority to the County Treasurer to be head of HR").

employees." Tex. Att'y Gen. Op. No. KP-0052 (2015) at 2 (citing TEX. LOC. GOV'T CODE § 152.011). Staffing and salary levels are among the fiscal matters considered when a commissioners court prepares the county budget. *See generally* TEX. LOC. GOV'T CODE §§ 111.001–.014 (governing county budget preparation in counties with population of 225,000 or less that do not operate under subchapter C).[5] The commissioners court must generally adhere to its final budget, except in an emergency. *Id.* § 111.010(b). State law also authorizes a commissioners court to make a non-emergency amendment "to transfer an amount budgeted for one item to another budgeted item." *Id.* § 111.010(d).

Courts have upheld a commissioners court's mid-year reduction of an elected official's staff and salaries pursuant to the commissioners court's authority to amend the budget. *See Gattis v. Duty*, 349 S.W.3d 193, 198, 207 (Tex. App.—Austin 2011, no pet.) (upholding a budget amendment to move money for personnel salaries, taxes, and benefits from county attorney's office to county judge's office); *Griffin*, 266 S.W.3d at 201–02 (upholding a budget amendment to move officers in a law-enforcement mental health unit from constable's office to county sheriff's office). But a commissioners court may not, for instance, reduce an elected official's staff or salaries "in a manner that prevents the elected officer from performing the duties of office" or in contravention of a law that "governs the compensation for the" particular staff position. Tex. Att'y Gen. Op. No. KP-0052 (2015) at 3–4. Ultimately, whether a commissioners court may reduce an elected official's staff or the salaries paid to the staff in the middle of a budget year involves questions of fact that we do not resolve in an Attorney General opinion. *See, e.g.*, Tex. Att'y Gen. Op. No. KP-0416 (2022) at 2.

**Timekeeping**

You also pose a series of questions about timekeeping for employees of an elected official. *See* Request Letter at 3. Specifically, you ask whether a commissioners court may (1) "require all non-elected employees in the courthouse to use an electronic finger print time clock"; (2) authorize the human resources department to "deduct pay from an employee if, according to the time clock, the employee worked less than a full [forty]-hour week"; (3) require an elected official "to electronically or manually approve each staff member's weekly electronic time card"; and (4) authorize the human resources department to "refuse to pay an employee if the elected official fails to or refuses to approve the electronic time card." *Id*. We have only limited information about the practices you describe and thus advise only generally about these issues.

Various state laws address timekeeping by employees of elected officials. For instance, section 151.903 of the Local Government Code requires county officers in a county with a population of 500,000 or more to file a sworn payroll at the close of each month detailing certain information for each person employed by the officer and paid with county funds. TEX. LOC. GOV'T CODE § 151.903(a), (c). The county auditor is authorized to "prescribe the forms and systems, including a system of personnel and equipment records, necessary to carry out" section 151.903,

---

[5] We understand this to be the authority under which Stephens County adopts its budget. *See supra* n. 2; *see also* TEX. LOC. GOV'T CODE § 111.061 (providing that subchapter C is an alternative method of budget preparation only available in a county with a population of more than 125,000).

and "the county auditor or the county treasurer may withhold the payment of salaries until the records are filed or information is furnished as required." *Id.* § 151.903(d).

Section 157.021 of the Local Government Code authorizes a commissioners court "[i]n a county with a population of 265,000 or more" to "adopt and enforce uniform rules on the hours of work of department heads, assistants, deputies, and other employees whose compensation is set or approved by the court." *Id.* § 157.021(a). Attorney General Opinion GA-0847 concluded that a commissioners court likely has implicit "authority to mandate the method of timekeeping used by elected officers' employees whose compensation is set or approved by a commissioners court" pursuant to "its express authority [under subsection 157.021(a)] to enforce rules governing the hours of work of county employees." Tex. Att'y Gen. Op. No. GA-0857 (2011) at 6.

But we find no statute—nor do you suggest one exists, *see* Request Letter at 4–5—that addresses the authority of a commissioners court over timekeeping for employees of an elected official in a county with a population of less than 265,000. Consequently, we consider whether a commissioners court in a county of that size has implicit authority to require a certain method of timekeeping pursuant to other state law. "Authority is not implied lightly" but must be "indispensable" or "essential" to the exercise of a power expressly granted. *See Pecos Cnty. Appraisal Dist. v. Iraan-Sheffield Indep. Sch. Dist.*, 672 S.W.3d 401, 411 (Tex. 2023). "Any reasonable doubt concerning the existence of an implied power is resolved against the political subdivision." *Id.*

A commissioners court is charged with setting the compensation and other allowances for most county employees, TEX. LOC. GOV'T CODE § 152.011, and may premise that compensation on "a forty-hour work week," Tex. Att'y Gen. Op. No. JC-0239 (2000) at 5. The commissioners court also "shall audit and settle all accounts against the county and shall direct the payment of those accounts," TEX. LOC. GOV'T CODE § 115.021, as well as examine county financial accounts and reports, compare them with accompanying vouchers, and correct the accounts and reports, as appropriate, *id.* § 115.022(a). Accordingly, a commissioners court has "authority to approve payment of county claims and payroll." Tex. Att'y Gen. Op. No. KP-0160 (2017) at 3.[6] In order to carry out these fiscal powers, the commissioners court must have a means to substantiate the compensation paid to county employees. Timekeeping data produced from a timeclock is only one means of substantiating the time worked by and compensation due to an employee and, in this sense, cannot be said to "be indispensable" or "essential" to exercising these fiscal powers. *Iraan-Sheffield*, 672 S.W.3d at 411. A commissioners court therefore does not have implicit authority, pursuant to those fiscal powers, to require an elected official's employees use a certain method of timekeeping, such as a timeclock.[7]

---

[6] We note that Attorney General Opinion KP-0160's conclusion that this duty is nondelegable has been superseded by statute. *See* Act of May 17, 2019, 86th Leg., R.S., ch. 330, 2019 Tex. Gen. Laws 595, 595–96 (codified at TEX. LOC. GOV'T CODE §§ 113.047, 154.0235).

[7] As a result of this conclusion, we do not address your remaining timekeeping questions, which we understand to be premised on the commissioners court's ability to require the use of a timeclock. *See* Request Letter at 3.

Moreover, had the Legislature intended to provide the commissioners court with such authority, we presume it would have expressly provided the same, as in section 151.903, or included small counties within the scope of section 157.021. *See* TEX. LOC. GOV'T CODE §§ 151.903, 157.021; *In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 158–59 (Tex. 2021) (orig. proceeding) (explaining courts presume "the Legislature chose the statute's language with care, purposefully choosing each word, while purposefully omitting words not chosen" (quoting *In re Commitment of Bluitt*, 605 S.W.3d 199, 203 (Tex. 2020))).

**Vacation and Sick Leave**

We next consider your questions about vacation and sick leave for employees of elected officials. *See* Request Letter at 3–4. You first seek to understand who approves vacation and sick time for an elected official's staff. *Id*. at 3 (asking whether the human resources department or an elected official approves this time and whether human resources can override the official). "A county's commissioners court has the authority 'to confer employment benefits upon county officers and employees,'" *Lowe v. Rivera*, 60 S.W.3d 366, 369 n.2 (Tex. App.—Dallas 2001, no pet.) (quoting Tex. Att'y Gen. Op. No. JC–0131 (1999) at 1), including vacation and sick leave, *see* Tex. Att'y Gen. Op. No. KP-0374 (2021) at 2. However, it is generally for an elected county official to approve "what activities constitute a legitimate use of an employee's official time, *i.e.*, work time rather than vacation time." Tex. Att'y Gen. Op. No. JC-0239 (2000) at 4.

In relation to sick leave, you further ask whether a commissioners court may "set up a '[s]ick [p]ool' that restricts [the] amount that can be given and [the] amount that an employee may receive." Request Letter at 4. Chapter 157, subchapter E of the Local Government Code authorizes a commissioners court to establish a sick leave pool from which an eligible employee, facing catastrophic injury or illness, may draw when the employee exhausts all accrued paid leave and compensatory time to which the employee is entitled. *See* TEX. LOC. GOV'T CODE §§ 157.072(a), .075(a); *see also id.* § 157.071(2) (defining "[e]mployee"). The subchapter addresses both employee contributions to and withdrawals from a sick leave pool. *See id.* §§ 157.074–.075. An employee may, in a fiscal year, transfer one to five days of accrued sick leave time to a pool on approval by the administrator. *Id.* § 157.074(b); *see also id.* § 157.071(1) (defining "[a]dministrator"). "An employee who is terminated or who resigns or retires may donate not more than [ten] days of accrued sick leave time . . . ." *Id.* § 157.074(c). If an eligible employee applies to and receives permission from the administrator to withdraw time from the sick leave pool, the "employee may not use time . . . that exceeds the lesser of one-third of the total amount of time in the pool or 180 days." *Id.* § 157.075(b)–(c). In sum, while a commissioners court has authority to create a county sick-leave pool program, it must restrict the amount of time that an employee may contribute to and withdraw from the pool as provided in the subchapter.

**Discipline and Termination**

Next, we consider whether a commissioners court may authorize the human resources department to discipline or terminate employees who work in an elected official's office. Request Letter at 3. An exhaustive treatment of your question is beyond the scope of an Attorney General opinion, but we can advise you that the authority to discipline or terminate an employee who works for an elected official generally lies with the elected official. *See Garcia v. Reeves Cnty.*, 32 F.3d

200, 203 (5th Cir. 1994) ("In Texas, employees of any elected official serve at the pleasure of the elected official, regardless of whether there is a statute [specifying as much]."). Courts have, for instance, held that a commissioners court could not, by means of personnel procedures and policies, "assume any legal duty for the . . . discharge of" deputy constables, *Renken v. Harris Cnty.*, 808 S.W.2d 222, 226 (Tex. App.—Houston [14th Dist.] 1991, no writ), "or [the] discharge of the sheriff's employees," *Abbott*, 946 S.W.2d at 517; *cf.* Tex. Att'y Gen. Op. No. KP-0111 (2016) at 3 ("Disciplining deputies . . . falls within the sheriff's sphere of authority[] . . . ."). But the answer to this question depends on (1) whether the action taken is within the authority of the commissioners court, and if so, (2) whether the action usurps or unreasonably interferes with the performance of the elected official's constitutional or statutory duties. *See supra* p. 2.

**Bonding and Dual Employment**

Finally, you ask several broad questions regarding the legality of the employee pool and related actions of the commissioners court. *See* Request Letter at 3. While a comprehensive response to those questions is beyond the scope of an opinion, *see* Tex. Att'y Gen. Op. No. KP-0111 (2016) at 4 (explaining we do not construe county policies or resolve fact questions in the opinion process), we identify two issues that are not otherwise raised in your specific inquiries. First, you tell us that the commissioners court reviews and approves new employees for "bonding requirement[s] and legal eligibility." Request Letter at 2. While you do not specify what this entails, we note that some officials are authorized to require bonds for their deputies. *See, e.g.*, TEX. LOC. GOV'T CODE §§ 85.003(d) (relating to deputy sheriff), 86.011(b) (relating to deputy constable). A commissioners court may not usurp or unreasonably interfere with an elected county officer's authority to require a bond for the officer's deputies, assistants, and clerks. *See supra* p. 2.

Second, you tell us that employees are "cross-trained to work in all of the other elected officials' offices to provide flexibility across all departments." Request Letter at 1. A recent opinion discusses some of the issues that may arise when one employee works for two elected officials. *See generally* Tex. Att'y Gen. Op. No. KP-0486 (2025). That opinion concerns an administrative assistant working for both a county judge and a prosecuting attorney and observes that such an arrangement could lead the judge and attorney to violate certain rules and standards that govern those positions, as well as "prompt associated due-process problems." *Id.* at 4–5. In some circumstances it may, therefore, be imprudent to have a single employee work for multiple county officials. Moreover, this practice may run afoul of the prohibition against the commissioners court influencing the appointment of a person to the position deputy, assistant, or clerk. *See supra* pp. 3–4.

## S U M M A R Y

Though it may be legally advisable, we find no statute that requires all county elected officials to publicly advertise for job openings in their offices.

Whether any particular employment practice adopted by a commissioners court as to an elected official's employee is permissible depends on (1) whether the action taken is within the authority of the commissioners court and, if so, (2) whether the action usurps or unreasonably interferes with the performance of the elected official's constitutional or statutory duties.

A commissioners court must restrict the amount of time that an employee may contribute to and withdraw from a county sick leave pool as provided in chapter 157, subchapter E of the Local Government Code.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

MICHAEL C. COTTON
Chair, Opinion Committee

CHRISTY DRAKE-ADAMS
Assistant Attorney General, Opinion Committee